## Court of Appeals.

*October*, 1890.

*(Reversing* 7 *N. Y. Crim. Rep.* 329.)

## PEOPLE *v.* MORAN.

*Attempt to pick empty pocket—what constitutes such an attempt—Laws
of 1882, ch. 410, section 1447—Penal Code*, §§ 34–531.

The provisions of the Penal Code, § 34, defining an attempt as "an
　　act done with intent to commit a crime, and tending but failing
　　to effect its commission," were intended to reach cases where
　　the intent to commit a crime as an effort to perpetrate it, although
　　ineffectual, existed. Whenever the intent to commit the crime
　　exists, followed by acts apparently affording a prospect of success
　　and tending to render the commission of the crime effectual,
　　the accused brings himself within the statute.
The question whether an attempt to commit a crime has been made
　　is to be determined solely by the condition of the actor's mind
　　and his conduct in the attempted consummation of his design.
Evidence that defendant in a crowded market was seen to thrust his

hand into the pocket of a woman and to withdraw it therefrom empty, is sufficient to warrant a conviction of an attempt to commit larceny without proof that the pocket contained anything. Section 1447 of ch. 410 of the Laws of 1882 was repealed by the subsequent adoption of the Penal Code as being inconsistent therewith.

·Appeal by the people from a judgment of the general term of the supreme court, in the first department, reversing the conviction of defendant, Thomas Moran, in the court of general sessions, of an attempt to commit larceny in the second degree.

The evidence will be found in the report of the case at the general term (7 *N. Y. Crim. Rep.* 329).

*Jno. R. Fellows* (district attorney), *Wm. Travers Jerome* (assistant), for the people appellant.

*W. H. Hewson*, for defendant respondent.

RUGER, C.J.—The indictment in this case charged the defendant with an attempt to commit the crime of grand larceny in the second degree, by attempting to steal, take, and carry away from the person of an unknown woman, in the daytime, in the city and county of New York, certain goods, chattels, and personal property of a kind and description unknown, and of the alleged value of $10. It is claimed that the evidence did not show an attempt to commit a larceny. The crime of grand larceny in the second degree is defined, by section 531 of the Penal Code, among others, as that of a person who, under circumstances not amounting to grand larceny, steals and unlawfully appropriates property of any value, ·by taking the same from the person of another. A person who unsuccessfully attempts to commit a crime is made punishable by section 686 of the same Code. Section 34 defines an attempt as "an act done with intent to commit a crime, and tending but failing to effect its commission." I have thus

brought together the several statutes bearing directly upon the question involved in this appeal, for the purpose of exhibiting the clearness and directness of the provisions affecting the point to be determined. The evidence given upon the trial showed that the defendant, accompanied by two associates, was observed passing around among the people gathered in a crowded market in New York, and was seen to thrust his hand into the pocket of a woman, and to withdraw it therefrom empty. Upon being approached by an officer, the defendant's companions attempted to escape, but the defendant was arrested. The woman became lost in the crowd, and was not discovered. Upon this evidence, the defendant's counsel asked the court to direct a verdict for the defendant upon the ground that the facts proved did not support the charge in the indictment. The request was denied and the defendant excepted. This exception presents the only question raised in the case, and depends, for its solution, upon the construction to be given to section 34 of the Penal Code. The claim of the defendant is that the evidence did not show that the woman had any property in her pocket which could be the subject of larceny, and that an attempt to commit that crime could not be predicated of a condition which rendered its commission impossible. We are of the opinion that the evidence was sufficient to authorize the jury to find the accused guilty of the offence charged. It was plainly inferable from it that an intent to commit larceny from the person existed, and that the defendant did an act tending to effect its commission, although the effort failed. The language of the statute seems to us too plain to admit of doubt, and was intended to reach cases where an intent to commit a crime, and an effort to perpetrate it, although ineffectual, co-existed. Whenever the *animo furandi* exists, followed by acts apparently affording a prospect of success, and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute. To constitute the crime charged, there must be

a person from whom the property may be taken, an intent to take it against the will of the owner, and some act performed tending to accomplish it; and, when these things concur, the crime has, we think, been committed whether property could, in fact, have been stolen or not. In such cases the accused has done his utmost to effect the commission of the crime, but fails to accomplish it for some cause not previously apparent to him. The question whether an attempt to commit a crime has been made, is determinable solely by the condition of the actor's mind, and his conduct in the attempted consummation of his design. (People *v.* Lawton, 56 *Barb.* 126; McDermott *v.* People, 5 *Park.* 104; Mackesey *v.* People, 6 *Park,* 114; 1 *Amer. & Eng. Enc. Law,* tit. "Attempt"). So far as the thief is concerned, the felonious design and action are then just as complete as though the crime could have been, or, in fact, had been, committed, and the punishment of such offender is just as essential to the protection of the public, as of one whose designs have been successful. In the language of Bouvier's Law Dictionary, an "attempt" is an endeavor to do an act carried beyond mere preparation, but falling short of execution. Some conflict has been observed in English authorities on this subject, and it may be conceded that the weight of authority in that country is in favor of the proposition that a person cannot be convicted of an attempt to steal from the pocket, without proof that there was something in the pocket to steal (Reg. *v.* McPherson [1857], *Dears. & B. Cr. Cas.* 197; Reg. *v.* Collins [1864], *Leigh & C.* 471.) The cases in England, however, are not uniform on this subject, and the principle involved in the cases above cited was, we think, otherwise stated in Reg. *v.* Goodall (2 *Cox, Crim. Cas.* 41), where an attempt to commit a miscarriage was held to have been perpetrated on the body of a woman who was not at the time pregnant (See also Reg. *v.* Goodchild, 2 *Car. & K.* 293). In this country, however, the courts have uniformly refused to follow the cases of Reg. *v.* McPherson and Reg.

*v.* Collins, and have adopted the more logical and rational rule that an attempt to commit a crime may be effectual, although, for some reason undiscoverable by the intending perpetrator, the crime, under existing circumstances, may be incapable of accomplishment. It would seem to be quite absurd to hold that an attempt to steal property from a person could not be predicated of a case where that person had secretly and suddenly removed the contents of one pocket to another, and thus frustrated the attempt, or had so guarded his property that it could not be detached from his person. An attempt is made when an opportunity occurs, and the intending perpetrator has done some act tending to accomplish his purpose, although he is baffled by an unexpected obstacle or condition. Many efforts have been made to reach the North Pole, but none have thus far succeeded, and many have grappled with the theory of perpetual motion without success,—possibly from the fact of its non-existence,—but can it be said in either case that the attempt was not made? (It was well stated by Justice GRAY in Commonwealth *v.* Jacob (9 *Allen*, 274), that "whenever the law makes one step towards the acomplishment of an unlawful object with the intent or purpose of accomplishing it, criminal, a person taking that step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that, by reason of some fact unknown to him at the time of his criminal attempt, it could not be fully carried into effect in the particular instance."

The precise question here involved, under a similar statute, was considered in the case of Com. *v.* McDonald, 5 *Cush.* 365, where it was held that a person "may make an attempt—an experiment—to pick a pocket by thrusting his hand into it and not succeed, because there happens to be nothing in the pocket. Still, he has clearly made the attempt, and done the act towards the commission of the offence." The case of People *v.* Jones (46 *Mich.* 441), is also in point. There the accused stuck his hand into the

outside cloak pocket of a woman, but there was nothing in the pocket. It was held that the defendant was well convicted of the crime of attempting to commit larceny. The same question, under circumstances almost identical with those existing in this case, arose in State *v.* Wilson (30 *Conn.* 500), and the court there said " the perpetration of the crime was legally possible, the persons in a situation to do it, the intent clear, and the act adopted to the successful perpetration of it; and, whether there was or not property in the pocket, was an extrinsic fact, not essential to constitute the attempt." In Clark *v.* State, 86 *Tenn.* 511, the question was also considered, and it was held, where the proof showed that the defendant had opened the money drawer of one Porbles, that a charge to the jury stating, if the defendant's " purpose was to steal when he opened the drawer, and his opening it was a part of the act designed by him for getting possession of the prosecutor's money, he would be guilty of an attempt to commit larceny, even though, at that particular time, there was no money in the cash drawer," was correct. The case of Reg. *v.* Collins was there considered and disapproved.    There    are    numerous    other    cases    in    this country, analogous to those above cited, in which it has been held that an intent to commit a crime might be predicated of a condition which rendered it impossible for the crime to have been in fact committed.    Among them is the case of State *v.* Beal (37 *Ohio. St.* 108), where the defendant was indicted for the crime of burglariously entering into the warehouse of William Houts, with intent to steal, and take away his property.    It was held, the burglarious entrance having been shown, that the defendant could be convicted, although it was proven that the warehouse did not contain any property capable of being stolen.    In Rogers *v.* Commonwealth (5 *Serg. & R.* 462), the indictment charged that the defendant, with intent feloniously to steal and carry away the money of one Earle from his person, put his hand into the pocket of the coat of said Earle.    The court, overruling certain exceptions to the indictment, said : " The

intention of the person was to pick the pocket of Earle of whatever he found in it, and, although there might be nothing in the pocket, the intention to steal is the same. He had no particular intention to steal any particular article, for he might not know what was in it." To a similar effect are the cases of Hamilton *v.* State (36 *Ind.* 280), People *v.* Bush (4 *Hill,* 134), and People *v.* Lawton (*supra*). The elementary writers in this country have uniformly stated the rule as illustrated by the cases cited, and disapproved the English cases of Reg. *v.* McPherson and Reg. *v.* Collins (1 *Bish. Crim. Law,* § 741; 1 *Whart. Crim. Law,* § 186.) The uniformity and number of the cases cited constitute a weight of authority upon the question involved, that might well induce hesitation in any court, even if otherwise inclined, before pronouncing a contrary opinion; but we not only recognize their force as authority, but also approve of the reasoning by which the conclusions reached have been attained. The general term, however, determined by a divided court that a distinction existed between an intent to commit a crime and an attempt to commit it, and that the intent might exist although the crime was, under the circumstances, impossible of commission, while an attempt could not be predicated of any act tending to its perpetration unless the condition was such as to render its commission then possible. This conclusion was mainly reached by a consideration of the history of legislation on the subject in this state, and an inference drawn therefrom that the law-making power had, theretofore, recognized a distinction between "attempts" and an "intent," as affected by the possibility or impossibility of accomplishing the crime intended. Upon that assumption they have given a construction to section 34, Pen. Code, which materially circumscribes its plain meaning and effect. If the premises assumed by the general term are correct, it cannot be denied but that the argument made has some force. But a careful consideration of the statutes referred to leads us to a different conclusion in relation to the weight of the legislative interpre-

tation referred to.    By the Revised Statutes the crime of
grand larceny was defined to be " the felonious taking and
carrying away the personal property of another, of the value
of more than twenty-five dollars," (section 63, art. 5, tit. 3, c.
1, pt. 4), and an attempt to commit a crime " as the doing
of any act towards the commission of such offence, but
failing in the perpetration thereof, or being prevented or
interrupted in executing the same" (section 3, tit. 7, c. 1,
pt. 4).    Under this act it was held that a person who had
procured certain combustibles, and solicited another to use
them and fire the buildings of another, was properly con-
victed of the offence of attempting to commit a crime,
although the persons solicited never intended to commit the
crime, the court saying : " The offence then is fully made
out, for the intent to do the wrongful act, coupled with the
overt acts towards its commission, constitutes the attempt
spoken of by the statute" (McDermott *v.* People, *supra*).
To the same effect was Mackesey *v.* People (*supra*), and
People *v.* Lawton (*supra*).

In this condition of the law the legislature enacted
chapter 508 of the Laws of 1860, applicable to the city and
county of New York alone, which contained the following
sections: "Sec. 33.  Whenever any larceny shall be committed
in said city and county, by stealing, taking, and carrying
away from the person of another, the offender may be
punished as for grand larceny, although the value of the
property taken may be less than twenty-five dollars.
Attempts under similar circumstances may be punished as
for attempts to commit grand larceny.    Sec. 34.  Every
person who shall lay hand upon the person of another, or
upon the clothing upon the person of another, in said city
and county, under such circumstances as shall not amount
to an attempt to rob, or an attempt to commit grand
larceny, shall be deemed guilty of an assault with intent to
steal, and shall be punished as is now provided by law for
the punishment of misdemeanors.    It shall not be necessary
to allege or prove, in prosecution for an offence under this

section, any article intended to be stolen, or the value thereof, or the name of the person so assaulted." In 1862 the above sections were re-enacted by sections 2 and 3 of chapter 374 of the laws of that year, and made applicable to the whole state, and, as a later act covering the whole subject, undoubtedly superseded sections 33 and 34 of the act of 1860. It will be seen that the main feature of these provisions was to make the offence of stealing from the person grand larceny, independent of the value of the property taken, or the time or place when the attempt was made. In the consolidation act of 1882, passed July 1, 1882, sections 33 and 34 of the act of 1860 were re-enacted as a part of the charter of the city of New York. The legal effect of this re-enactment was not very important, since that city was already subject to the provisions of the act of 1862, which provided for the same offences, and it would seem to have had no other office to perform than to bring together in one act the various special provisions of law relating . to crimes in such city. This act had little effect as a legislative interpretation, inasmuch as it was intended merely as a codification of existing criminal laws affecting the city of New York, and was immediately superseded by the enactment of the Penal Code (People *v.* Jaehne, 103 *N. Y.* 182 ; 4 *N. Y. Crim. Rep.* 478). In 1885, by chapter 524 of the Laws of that year, the legislature passed an act requiring the attorney-general to prepare and report a bill to repeal the statutes superseded by the Penal Code and Code of Criminal Procedure, and, in pursuance of this direction, chapter 593 of the Laws of 1886 was reported to the legislature, and passed by it. This chapter provided for the repeal of a large number of statutes, among which were chapter 508 of the Laws of 1860, and chapter 374 of the Laws of 1862. In the consideration of the questions involved, it must be borne in mind that the question to be determined is as to the meaning and effect of section 34 of the Penal Code, and that must be done by considering the intent of its authors. This

Code is the latest statute on the subject, and, whatever its requirements, if they are expressed in plain and unambiguous language, are not subject to any rule of construction, which tends to subvert its plain meaning and effect. People v. Jaehne, *supra*. Assuming that the legislature of 1862 supposed an attempt to commit a crime was not predicable of a condition which did not permit of its accomplishment, and thought a special law necessary to reach such cases, it would not necessarily follow that the legislature of 1881 entertained the same views. The design in 1881 was to codify the criminal laws of the state, and embrace them all in a single enactment, under a uniform system, and it must be assumed that the authors of the criminal legislation of that year had considered the existing laws on the subject, and had omitted only such provisions thereof as they deemed superseded by the proposed Code, or as was otherwise repealed. We think it must be held under the doctrine of the Jaehne Case, that section 1447 of the consolidation act was repealed by the subsequent adoption of the Penal Code, as being inconsistent therewith. In reviewing these statutes it seems difficult to resist the conclusion that the legislature of 1862 assumed there were cases of an attempt to steal from the person, which were not covered by the existing law on the subject. The court below have assumed that the only difference discoverable was the alleged fact that, in the case of an attempt to commit a crime, there must be a possibility of committing it to warrant a conviction, and that section 3 of chapter 374 of the Laws of 1862 was intended to create the minor offence of an assault with intent to steal from the person to cover such cases. Upon these assumptions the court has inferred a legislative interpretation of the then existing law; which it has extended to govern the interpretation of the Penal Code subsequently enacted. Some force must, undoubtedly, be given to the views expressed; but we think they are much weakened by a consideration of the conditions of the pre-existing law, and the subsequent legislative interpreta-

tion. We have been unable to find any authority in this state for the assumption that an attempt to commit larceny, previous to 1862, was not punishable under the Revised Statutes, whether the commission of the crime was possible or not. On the contrary, the cases of People *v.* Lawton, McDermott *v.* People, and of Mackesey *v.* People, heretofore cited, clearly hold that to convict of an attempt to commit a crime, it is necessary to prove only an intent to commit it by doing some act tending to its perpetration. So that, whatever may have been the views of the legislature of 1862, they had no support in the condition of the pre-existing law. If we refer to the subsequent legislation, we shall find most positive proof of the sense of the legislature as to the impropriety and uselessness of section 3 of the act of 1862. In the enactment of the Penal Code, section 2 of the act of 1862 was re-enacted, while section 3 was wholly omitted. This omission in a codification of the criminal laws of the state is entirely unexplainable, except upon the theory that, in the minds of the law-makers, that section was unnecessary, because it was covered by other sections of the Code. This view is further confirmed by the action of the legislature of 1886, which wholly repealed chapters 508 and 374 of the Laws of 1860 and 1862, upon the ground that they were superseded by the provisions of the Penal Code. Whatever, therefore, might have been the views of the legislature of 1862 on this subject, we think they have been quite nullified and discredited by the later expressions of the legislative will. It adds much to the force of the views expressed that they will cause the law in the city of New York to conform to that prevailing in other parts of the state, and avoid the unseemly spectacle of unequal punishments for the same offence in different parts of the same jurisdiction. People *v.* Jaehne, *supra*. The order of the general term should be reversed, and the judgment of the court of general sessions affirmed. All concur, except ANDREWS, J., taking no part.