VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order reversed and a new trial granted, with costs to the appellant to abide the event.

---

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES W. GARDNER, Appellant.

*Attempt to commit the crime of extortion through fear — failure to prove the existence of fear — evidence to repel an imputation of guilty motive.*

A conviction for an attempt to commit the crime of extortion, through fear, cannot be sustained where the evidence conclusively shows the absence, on the part of the person against whom the crime was attempted, of a state of mind necessary to make possible the perpetration of the crime attempted, as, *e g.*, where the evidence shows that such person parted with his money for the purpose of convicting the wrongdoer of a crime, and, consequently, without being put in fear. (O'BRIEN, P. J., dissenting.)

On the trial of an indictment charging the defendant with having attempted to obtain a certain sum of money from a woman named, by threatening to accuse her of keeping a disorderly house, and by means of such threats putting her in fear, the evidence was to the effect that the defendant, who was an agent of a society for the prevention of crime, threatened to have the woman, who was the keeper of a disorderly house, prosecuted for keeping such house, and agreed

that if she would pay him a certain sum he would not accuse her of that crime; that the woman, acting as a decoy for the police and trying to induce the defendant to receive money from her under such circumstances as would render him guilty of the crime of extortion, gave to the defendant the said sum of money, which she had received from the police for that purpose. The defendant was convicted as charged.

*Held,* that although the evidence established all the other essential elements of the crime of extortion, still, as it failed to show that the woman was induced by fear to give the money to the defendant, the conviction for an attempt to commit extortion could not stand; and that, it being apparent that a conviction could not be sustained under the indictment, the defendant should be discharged. (O'BRIEN, P J , dissenting.)

In a criminal case, when it is proved that the defendant has committed some act, and the motive with which it was done is material, he may testify in regard to his motive and may prove facts by others tending to show his intent; and when evidence tending to show a guilty motive on the part of the accused has been given, he has a right to give evidence to prove a different motive and repel the imputation.

Evidence having been given for the prosecution from which the jury might infer that the motive which induced the defendant to associate with the woman was unlawful and for the purpose of securing money from her, the defendant undertook to testify on his own behalf that he had received from certain directors of the society of which he was an agent, instructions to pursue an inquiry as to an alleged blackmailing of the woman by a former discharged agent of the society, and to obtain from her, if possible, statements in reference thereto. This evidence was excluded.

*Held,* error; that it was competent for the defendant to prove in explanation of his conduct that he associated with the woman by the direction of the Society for the Prevention of Crime for the purpose of securing a statement from her.

APPEAL by the defendant, Charles W. Gardner, from a judgment of the Court of General Sessions of the Peace of the city and county of New York, rendered on the 14th day of February, 1893, convicting him of the crime of attempting to commit the crime of extortion, and from an order denying the defendant's motions for a new trial, and in arrest of judgment.

*John W. Goff,* for the appellant.

*Henry B. B. Stapler,* for the respondent.

FOLLETT, J. :

It is alleged in the indictment that at the city of New York, on the 4th day of December, 1892, the defendant attempted to obtain

$150 from Catherine Amos, by threatening to accuse her of keeping a disorderly house, and by means of such threat put her in fear.

The following are the sections of the Penal Code under which the defendant was convicted:

" § 552. Extortion is the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right."

" § 553. Fear such as will constitute extortion may be induced by a threat:

" 1.  *   *   *

" 2. To accuse him   *   *   *   of any crime."

" § 34. An act, done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime."

" § 685. A person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime was consummated, unless the court, in its discretion, discharges the jury and directs the defendant to be tried for the crime itself."

The crime of extortion is not committed unless the person parting with his money is induced to do so by the wrongful use of force or fear, or under color of official right. No force was used by the defendant, nor did he obtain the money under color of official right, and there is no charge in the indictment of the use of force or of the assertion of official right.

In the criminal law putting in fear is constructive violence. (2 Russ. Cr. [5th ed.] 89–93.) When fear is a necessary ingredient of a crime it must actually exist at the time of the alleged commission of the offense, and if the person alleged to have been injured part with his money or property without at the time being in fear a crime is not committed. (*Rex* v. *Jackson*, 1 East P. C. addenda XXI; 2 Russ. Cr. [5th ed.] 104; *Reane's Case*, 2 Leach, 616; S. C., 2 East P. C. 734; 1 Bish. Cr. L. [8th ed.] § 436.)

If, as in the case at bar, the complainant part with his money for the purpose of convicting the wrongdoer of a crime, no offense is committed because there is no putting in fear. (*Rex* v. *Fuller*, R. & R. 408; 1 Whart. Cr. L. [8th ed.] §§ 141, 857.) In the case last cited the person applied to Fry to lend him ten shillings, and upon his refusal threatened to charge him with an unnatural crime, and got from him one pound and ten shillings. Fry parted with the

money from an anxiety that his master's family might not be disturbed, and in expectation that he might secure the prisoner. He immediately stated the circumstances to his master and to a friend, and planned with them what he should do in case the prisoner applied again. He did apply again, and Fry appointed a place where they would meet, marked some money, engaged a constable, and, having met the prisoner, gave it to him and had him arrested. He parted with his money in order that he might prosecute. This was held not to be putting in fear. (2 Russ. Cr. [5th ed.] 110 ; 1 Bish. Cr. L. [8th ed.] § 437.)

The evidence in behalf of the People, which we must assume was believed by the jury, established every ingredient of the crime of extortion, except that Catherine Amos was induced by fear to give $150 to the defendant. In saying this we assume, without deciding that the fact is immaterial, that the money did not belong to the woman, but to Captain William S. Devery, who delivered it to her for the sole purpose of having it given to the defendant. It being known (theoretically by the grand jury, but in fact by the draughtsman of the indictment) that a conviction of the crime of extortion could not be had without proving that the woman was induced by fear to part with the money, and it being known that this fact could not be proved, the defendant was indicted for an attempt to commit that crime.

Catherine Amos, who was the principal witness for the People, testified that for nine years she had been the keeper of houses of prostitution in the city of New York, and that the defendant, who was the agent of a society for the prevention of crime, on several occasions since October 13, 1892, threatened to have her prosecuted for keeping such houses, and agreed that if she would pay him certain sums of money, and especially $150, that he would not accuse her of that crime. She testified, and so did Captain William S. Devery, that from October 19, 1892, to December 4, 1892 (the last date being the day on which the money was received), she had been acting as a decoy of the police, and trying to induce the defendant to receive money from her under such circumstances as would render him guilty of a crime, and enable the police to arrest and convict him of it. There is no pretense that the woman was induced by the threats of the defendant to give the money to him.

Whether certain acts are or are not criminal depends entirely on whether the person on or against whom they are perpetrated consents to and participates in those acts. Such acts do not constitute a crime in case the assent of the person against whom they are committed is freely given. When a particular state of mind is a necessary ingredient of an offense, that offense cannot be committed unless the state of mind prescribed by the statute is shown to exist.

The rule is well stated by Wharton in section 149 of the eighth edition of his Criminal Law : " It is also to be noticed that in cases in which, as in rape and larceny, the act, to be indictable, must be against the prosecutor's will, when the prosecutor by such inveigling, consents to the act, these particular forms of prosecutions cannot be maintained."

That no injury is done to the willing is a maxim of the criminal, as well as of the civil law, if the one who consents is capable of consenting and consents uninfluenced by fear, force or fraud. This rule is applicable, however, only to the alienable rights of the person consenting. The consent of a person that another might take his life would be no justification of a homicide.

When acts are committed, the criminality of which depends on whether the person on or against whom they are committed, assents to or dissents from their commission, and between the attempt and the execution there is . interposed the consent of the person against whom perpetrated that they may be committed, an indictable offense is not made out. (Whart. Cr. L. [8th ed.] § 177.)

It is plain that a conviction cannot be sustained under section 685 of the Penal Code, and that the district attorney acted wisely in not presenting an indictment for the crime of extortion.

The crucial question in this case is whether a conviction for an attempt to commit the crime of extortion can be sustained where the evidence conclusively shows the absence, on the part of the person against whom the crime is attempted, of a state of mind necessary to make possible the perpetration of the crime attempted.

We take it to be a general rule, having few, if any, exceptions, that unless the completed act, accomplished as intended and attempted, will constitute a crime, no step or steps taken to perpetrate the act will amount to a criminal attempt. (Bish. Cr. L. [8th ed.] §§ 747, 728.) We are referred to *People* v. *Moran* (123

N. Y. 254) as an authority to sustain this conviction. In that case the defendant committed a trespass on a person with intent to steal, and had he accomplished the act which he attempted and intended, the crime of larceny would have been committed. That case is within the rule above stated.

A boy so young that he is deemed incapable of perpetrating a rape cannot be convicted of an attempt to commit that offense, nor of an assault with attempt to ravish, but he may be convicted of an assault and battery. (*People* v. *Randolph*, 2 Park. 213; 1 Bish. Cr. L. [8th ed.] § 746, and cases cited.)

At common law, if a person intending to steal an article take it with the owner's consent it is not larceny. (*Thorne* v. *Turck*, 94 N. Y. 90–95; 2 Bish. Cr. L. [8th ed.] § 811; 1 Whart. Cr. L. [8th ed.] § 915.) In such a case the completed act, accomplished as intended, not being a crime, none of the steps taken being ingredients of the offense, would constitute a crime, and the taker could not be convicted of an attempt to commit the crime of larceny.

If an assault should be made on a man dressed as a woman with intent to ravish, the assailant believing the person assaulted to be a woman, he could not be convicted of an intent to ravish, because in such a case the commission of the crime of rape would be a legal impossibility. So, in the case at bar it was a legal impossibility to commit the crime of extortion as against the woman Amos, because she inveigled the defendant to commit the act and was not put in fear by him.

The learned recorder correctly laid down the rule in his instruction to the jury in the following propositions:

"III. If you find that he did make such a threat you must then find, before you can convict, that the woman Clifton was, by such threat, placed in fear, and that it was only through fear she was induced to agree to part with her money."

"IIIa. If you find that this woman did agree to pay the defendant money, and in so doing acted of her own free will and without fear, then there was no attempt to extort the money, and if you have any reasonable doubt on this point you must give the benefit to the defendant and acquit him."

As we have before stated, there is no evidence which tends to show that the woman acted through fear, the uncontradicted evi-

dence being that she induced the defendant to receive the money from her. The jury failed to follow the plain instruction given by the court, and the verdict should be set aside.

The People proved that on several occasions between October 13 and December 4, 1892, the defendant and Catherine Amos were in each other's company upon apparent terms of intimacy, driving, eating and drinking, each in turn entertaining the other. The defendant, when on the stand, testified that he had so associated with this woman. The effect of this evidence was two-fold: to discredit the defendant and to show that he had an opportunity, by threats or by promises of protection, to induce the woman to give him money. It appears by the evidence that George C. Grant, a discharged employee of the society, had visited Catherine Amos and other such persons and offered, for sums of money, to prevent prosecution by the society of which the defendant was the agent, which was known to the directors of the society. The defendant testified that he associated with Catherine Amos for the purpose of obtaining from her a written statement or an affidavit of the particulars of Grant's proposition to her. In this connection the defendant was asked: " Q. After you reported the matter to Dr. Parkhurst and Mr. Morse of the executive committee of the society, under whom you were acting, did you receive from them directions to pursue the matter, and to obtain if possible any statements of alleged blackmail from the woman Clifton (Amos)?"

This was objected to and the evidence called for by the question was excluded and an exception taken.

Frank Moss and Thaddeus D. Kenneson, two directors of the society, were sworn in behalf of the defendant, by whom he offered to prove that the officers of the society gave him instructions to obtain a statement from Catherine Amos in respect to Grant's proposition to her. This was excluded and an exception taken. In these rulings the court erred.

In a criminal case, when it is proved that the defendant has committed some act, and the motive with which it was done is material, he may testify in regard to his motive and may prove facts by others tending to show his intent. (*Kerrains* v. *People*, 60 N. Y. 221.) And when evidence tending to show a guilty motive on the part of the accused has been given, he has a right to give evidence

to prove a different motive and repel the imputation. From the evidence offered the jury were asked to infer, and probably did infer, that the motive which induced the defendant to associate with Catherine Amos was unlawful and for the purpose of securing money from her. It was competent for him to prove in explanation of his conduct that he associated with the woman by the direction of the Society for the Prevention of Crime for the purpose of securing a statement from the woman. It is urged on the part of the People that if it were error to exclude this evidence it was ·cured by subsequently allowing Dr. Charles H. Parkhurst to testify on the same subject. This witness was ill at the time of the trial, and his deposition was read. He testified : " Q. Did the executive committee of the society at this meeting next subsequent to October 14, 1892, give any instruction to Gardner? A. Yes, sir. Q. So far as they relate to Grant and his actions, please state them. A. The instructions we gave him, as far as I can recollect, were that, in consonance with his own view of the matter, as he had previously expressed it to me privately, and in consonance with our views, which were the same as his, he should seek to make a case against these women, and that he should also strive to secure from them at least an affidavit to the effect that Grant was, in the name of the society, attempting to levy blackmail upon them. We also instructed him that he should use such means as he saw fit in order to secure such affidavits. These instructions were oral."

This did not cure the error. The defendant had the right to prove the fact by more than one witness, and it is well known that facts testified to in a deposition and read in evidence have not the same force with a jury as those testified to by witnesses in the presence of the court. Again, this evidence related only to the instructions given by the executive committee to Gardner. The defendant had offered to show that he had not only received instructions but that he acted pursuant to and by reason of those instructions.

For these errors the judgment should be reversed, and, as it is apparent that a conviction cannot be sustained under this indictment, the defendant should be discharged.

PARKER, J., concurred.

O'BRIEN, P. J. (dissenting):

With the conclusion of my associates, as expressed in the opinion of Mr. Justice FOLLETT, that because there was no evidence which tended to show that the woman acted through fear, the verdict must be set aside and the prisoner discharged, I cannot concur.

The prisoner was indicted and tried for an attempt to commit the crime of extortion, and the record shows that the evidence tended to establish the existence of every other element constituting the crime of extortion, except that the woman, in paying the money, was actuated in so doing by fear. This latter element, essential to constitute the crime itself, if wanting, it is urged, renders it impossible to sustain an indictment and conviction for the lesser crime of an attempt at extortion.

An attempt is defined by the Penal Code (§ 34), as "an act done with intent to commit a crime, and tending, but failing to effect its commission." Or, as amplified by Bishop in his treatise on Criminal Law (8th ed., vol. 1, § 728): "An attempt is an intent to do a particular thing which the law, either common or statutory, has declared to be a crime, coupled with an act toward the doing, sufficient both in magnitude and proximity to the fact intended, to be taken cognizance of by the law.    *    *    *    Or, more briefly, an attempt is an intent to do a particular criminal thing, with an act toward it falling short of the thing intended."

In the case at bar, if the testimony of the witnesses for the People was credible — and that was a question for the jury — the prisoner attempted to obtain money from the complainant by oral threats to accuse her of the crime of keeping a house of ill-fame. It is true that the fear intended to be produced by his threats did not follow, which was due to the fact, extrinsic, and unknown to the prisoner, that the complainant, in appearing to be affected by such threats into delivering up the money, was acting under the instructions of the police, with a view to entrap the prisoner. Had the prisoner succeeded in producing the fear he intended, the substantive crime would have been made out; but, in the absence of such fear on the part of the complainant, I think that the evidence of the intent to extort, and the acts done tending to effect the commission of the crime, but which failed to effect its commission by reason of the attitude of the complainant, was sufficient to justify a conviction for an attempt.

Upon this question of fear, it seems to me that throughout the fact is lost sight of that it is the mind of the wrongdoer and his intent, and not the effect or result upon the person sought to be coerced, in a crime of this character, which must control. As said in *People* v. *Moran* (123 N. Y. 254): "The question whether an attempt to commit a crime has been made, is determinable solely by the condition of the actor's mind, and his conduct in the attempted consummation of his design." I concede that there are certain crimes where the element of force or fear must be present in order to constitute the offense. Such an instance would be of rape, where if the consent of the woman was given, or if force was not used, the elements necessary to constitute the crime would be lacking, and a conviction for an attempt to commit such a crime upon such facts could not be predicated. In the instance given of rape the intent is to subject the physical body to the unlawful designs of the wrong-doer; whereas, in the case at bar, it was intended to produce a mental condition, namely, fear, which must be present to constitute the substantive crime. And it seems to me that where every act essential to constitute the crime is present, except the mental effect intended to be produced, namely, fear (and thus under the definition it falls just short of the crime itself), that the offense thus described is criminal, and comes within the definition of an attempt to commit the crime.

Here the evidence tended to prove that the prisoner had the criminal intent, and had made the effort to consummate that intent, which, for causes unknown to him, was not successful, and which prevented him from committing the crime. The crime was as complete as the prisoner could make it; and to conclude that the failure to establish every element essential to constitute the crime, except of fear, must result in the discharge of the prisoner, is equivalent to my mind to asserting that there can be no such crime as an attempt to commit extortion. For, if the reasoning applied to the absence of fear is good, then, unless all the elements essential to constitute the crime are present, an indictment and conviction must fall because a conviction for an attempt cannot be sustained except in a case where the crime itself is committed.

I cannot but regard the reasoning of the Court of Appeals in the case of *People* v. *Moran* (*supra*), as controlling in principle.

There the defendant was indicted and convicted of an attempt to commit the crime of grand larceny in the second degree. This crime is defined by section 531 of the Penal Code as the stealing or unlawful appropriation of property of any value by taking the same from the person of another. The evidence in that case showed that the prisoner was seen to have thrust his hand into the pocket of a woman, and to have withdrawn it therefrom empty; and the claim was there made that the evidence did not show that the woman had any property in her pocket which could be the subject of larceny, and that an attempt to commit that crime could not be predicated of a condition which rendered its commission impossible.

This claim is thus disposed of in the opinion: "To constitute the crime charged there must be a person from whom the property may be taken, an intent to take it against the will of the owner, and some act performed tending to accomplish it; and when these things concur, the crime has, we think, been committed, whether property could in fact have been stolen or not. In such cases the accused has done his utmost to effect the commission of the crime, but fails to accomplish it for some cause not previously apparent to him. The question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind, and his conduct in the attempted consummation of his design. (Citing *People* v. *Lawton*, 56 Barb. 126; *McDermott* v. *People*, 5 Park. Cr. Rep. 104; *Mackesey* v. *People*, 6 id. 114; Am. & Eng. Ency. of Law, title "Attempt.") So far as the thief is concerned, the felonious design and action are then just as complete as though the crime could have been or in fact had been committed, and the punishment of such offender is just as essential to the protection of the public as of one whose designs have been successful."

The answer to the claim here made, that because the crime of extortion was not possible, in the absence of fear on the part of the complainant, therefore, an indictment and conviction upon evidence as and for an attempt to commit such crime is likewise impossible, I think is to be found in the language just quoted from the opinion in *People* v. *Moran*, which is throughout strengthened by the citation of numerous authorities. Thus, among others, reference is had to the case of *Commonwealth* v. *Jacobs* (9 Allen, 274), wherein Justice GRAY says: "Whenever the law makes one step towards

the accomplishment of an unlawful object, with the intent or purpose of accomplishing it, criminal, a person taking that step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that by reason of some fact unknown to him at the time of his criminal attempt it could not be fully carried into effect in the particular instance. Upon this principle, on an indictment under a statute against passing or disposing of forged bank notes with intent to defraud, it has been held no defense that those to whom the notes were passed knew them to be forged, and, therefore, could not be defrauded."

And, again, in the case of *The State* v. *Wilson* (30 Conn. 500), referred to in the opinion, the court there said : " The perpetration of the crime was legally possible, the person in a situation to do it, the intent clear, and the act adapted to the successful perpetration of it, and whether there was or not property in the pocket was an extrinsic fact not essential to constitute the attempt."

And after quoting with approval many of the cases, the opinion in *People* v. *Moran* says : " There are numerous other cases in this country analogous to those above cited, in which it has been held that an attempt to commit a crime might be predicated of a condition which rendered it impossible for the crime to have been in fact committed."

It is unnecessary, however, that I should pursue this subject further, as I have sufficiently explained the views I entertain, that while to constitute the substantive crime it would be necessary, in an indictment to aver, and upon the trial to prove, every essential ingredient enumerated in the definition of the crime, this is not requisite in an indictment or upon a trial where the charge is an attempt to commit that crime. While, therefore, in the case at bar, to establish the crime of extortion it would have been necessary to aver and prove that through fear the woman had delivered the money to the prisoner, yet the failure by his threats to produce such fear would not prevent an indictment and conviction for an attempt at extortion, provided every other element requisite and essential to constitute the crime were present.

In addition to this ground, my associates have concluded that it was error to have excluded certain evidence offered by the prisoner

tending to show that in what he did he acted under the instructions of the Society for the Prevention of Crime and certain of its officers. In the view that the rulings of the trial judge in excluding such evidence was error I concur; these, however, upon a new trial could be cured, but in their conclusion upon the main ground that " it is apparent that a conviction cannot be sustained under this indictment, and that the defendant should be discharged," I dissent.

Judgment reversed and the defendant discharged.