(112 App. Div. 516)

### PEOPLE v. JAFFE.

(Supreme Court, Appellate Division, First Department. April 20, 1906.)

1. RECEIVING STOLEN GOODS—ELEMENTS OF OFFENSE.

The prosecution on a trial for a violation of Pen. Code, § 550, making it a crime for a person to receive stolen property knowing the same to have been stolen, must prove that the property was stolen property, and that at the time accused received the same he knew that it had been stolen.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Receiving Stolen Goods, §§ 1, 4, 5.]

2. CRIMINAL LAW—OFFENSES—ATTEMPTS.

Whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his designs, and the fact that the crime attempted could not be committed is immaterial.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 51.]

3. RECEIVING STOLEN GOODS—ATTEMPTS.

Pen. Code, § 550, punishes the receiver of stolen property knowing that the same is stolen. Section 34 provides that an act done with intent of committing a crime, but failing to effect its commission, is an attempt to commit the crime. A clerk stole goods from his employer, intending to sell them to accused. Subsequently the clerk confessed, and the employer recovered the goods, and later he redelivered them to the clerk to sell to the accused. The evidence was sufficient to warrant a finding that

accused on receiving the goods believed that they were stolen. *Held*, that accused could not be convicted of receiving stolen property, but he could be found guilty of an attempt to commit the offense.

Appeal from Court of General Sessions, New York County.

Samuel Jaffe was convicted of an attempt to receive stolen goods, and he appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

Henry W. Unger (Abraham Levy, on the brief), for appellant.

Robert C. Taylor and Wm. Travers Jerome, Dist. Atty., for the People.

CLARKE, J. The defendant was indicted for the crime of criminally receiving stolen property, in that:

"Twenty yards of cloth, of the value of twenty-five cents per yard, of the goods, chattels, and personal property of F. Norton Goddard, Wilmer A. Baldwin, and Joseph Mathers, copartners in trade, then and there doing business in and by the firm name and style of J. W. Goddard & Sons, by a certain person or persons to the grand jury aforesaid unknown, then lately before feloniously stolen, taken and carried away from the said copartners, unlawfully and unjustly did feloniously receive and have; the said Samuel Jaffe then and there well knowing the said goods, chattels, and personal property to have been feloniously stolen, taken, and carried away."

Section 550 of the Penal Code provides that:

"A person who buys or receives any stolen property * * * knowing the same to have been stolen * * * is guilty of criminally receiving such property."

The gist, therefore, of the crime charged in the indictment was the receiving stolen property, knowing the same to have been stolen. Upon such charge the people were required to prove that the property received was, as matter of fact, stolen property, and that at the time defendant received the same he knew that it had been stolen. The proof shows that some time prior to October 6, 1902, the date laid in the indictment, a clerk in the employ of Goddard & Sons stole goods from that firm, and, as he claims, sold them to the defendant, who kept a small tailor shop. No charge is made against the defendant with respect to these earlier transactions. Their relevancy was upon the question of the defendant's knowledge that the goods which the indictment charges he received were stolen. The proof as to the goods covered by the indictment tended to show that Sadler, the clerk, stole the roll of cloth, which he rewrapped, and placed in a certain place in the store, from which place Donegan, another employé, took it to a certain shoe store, at which place, some three days afterwards, Sadler got the roll. Goddard & Sons had discovered the facts, or Sadler had made a confession. At any rate, Mr. Marratt, the manager of Goddard & Sons, was at the shoe store when Sadler got the roll, and followed him out, and went with him to police headquarters, followed by several detectives. At police headquarters the package was opened. Marratt identified the goods as the property of Goddard & Sons, cut the piece up into three parts, and marked each for identification. Marratt then carried the cloth up as far as Twenty-Third street, and hand-

ed to Sadler. Marratt testified that in everything he did he acted as the representative of the Goddards, with full authority, and that it was done pursuant to a prior arrangement with the police detective who was in charge; that Sadler was sent to the shoe store pursuant to that arrangement, and that his instructions, the cutting of the goods, and his going to the place of defendant, Jaffe, were all pursuant to this arrangement. "His authority was to endeavor to sell these goods to the defendant." Sadler, in accordance with this arrangement and these instructions, took the cloth to Jaffe, who gave him $2.50. The evidence is sufficient to have warranted the jury to find that the defendant received the goods believing them to have been stolen. So, also, the evidence is sufficient to warrant the finding that the goods had been stolen.

The District Attorney conceded upon the trial, and the entire case, from first to last, by all parties, was tried upon the assumption, however, that when these goods were received by the defendant they had lost the character of being stolen goods. This may be clearly demonstrated from this extract from the record:

"The Court: It is conceded here that the property in question was first stolen, * * * and subsequently taken back into the possession of Goddard & Sons.

"Mr. Jerome: So that at the time of its alleged receipt by this defendant, or prior to the time of its alleged receipt by this defendant, its possession had been recovered by the owner.

"Mr. Levy: And before they had gotten into the possession of the defendant?

"Mr. Jerome: Yes.

"Mr. Levy: In other words, there had been a recovery by the owner of the property.

"Mr. Jerome: So that at the time the goods were actually conveyed to this defendant they were not then and there stolen goods.

"Mr. Levy: They had lost the character of being stolen goods.

"Mr. Jerome: That is entirely correct."

The District Attorney's brief upon this appeal states as follows:

"Various passages in the record show that the people conceded on the trial, as they now concede on this appeal, that because of the interception the goods lost their character as stolen property."

Upon those concessions and upon this record, therefore, the question as to whether or not, by retaking the stolen goods for a short time, marking them for identification, and redelivering them to the thief for the purpose of having him deliver them to the receiver, under the belief on the receiver's part that they were stolen—in short, setting a trap for him—destroyed their quality as stolen goods, and prevented conviction of the crime charged in the indictment, is not in the case, and upon it we express no opinion. A conviction of an attempt to commit the crime charged was asked, and the jury upon that proposition found the defendant guilty.

The question here is, was the defendant properly found guilty of an attempt to receive stolen property, knowing the same to have been stolen, when it is conceded that the goods were not stolen property when received by him, and therefore it was impossible for him to know that they were stolen. Can he be convicted of the attempt, when the crime attempted was impossible of commission? Section 34 of the Penal Code provides that:

"An act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime."

And section 35 thereof provides that:

"Upon the trial of an indictment, the prisoner may be convicted of the crime charged therein, or of a lesser degree of the same crime, or an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime."

The learned counsel for the defendant states his position as follows:

"The learned District Attorney concedes that it was legally impossible for the defendant to commit the crime charged in the indictment upon the state of facts disclosed at the trial. Therefore, the question presents itself whether one can, in contemplation of our Penal Code and the criminal law, so attempt to do what is legally impossible as to make himself punishable for the attempt to commit the legal impossibility."

In People v. Moran, 123 N. Y. 254, 25 N. E. 412, 10 L. R. A. 109, 20 Am. St. Rep. 732, the indictment charged the defendant with an attempt to commit the crime of grand larceny in the second degree by attempting to steal from the person of an unknown woman certain goods unknown, of the alleged value of $10. The proof showed that the defendant was seen to thrust his hand into the pocket of a woman, and withdraw it empty. The woman was lost in the crowd, and of course no proof was offered to show that she had anything of value in her pocket which could have been the subject of larceny. Ruger, C. J., said:

"We are of the opinion that the evidence was sufficient to authorize the jury to find the accused guilty of the offense charged. It was plainly inferable from it that an intent to commit larceny from the person existed, and that the defendant did an act tending to effect its commission, although the effort failed. The language of the statute seems to us too plain to admit of doubt, and was intended to reach cases where an intent to commit a crime and an effort to perpetrate it, although ineffectual, co-existed. Whenever the animo furandi exists, followed by acts apparently affording a prospect of success, and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute. To constitute the crime charged, there must be a person from whom the property may be taken, an intent to take it against the will of the owner, and some act performed tending to accomplish it; and, when these things concur, the crime has, we think, been committed, whether property could in fact have been stolen or not. In such cases, the accused has done his utmost to effect the commission of the crime, but fails to accomplish it for some cause not previously apparent to him. The question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design. So far as the thief is concerned, the felonious design and action are then just as complete as though the crime could have been, or in fact had been, committed, and the punishment of such offender is just as essential to the protection of the public as of one whose designs have been successful."

This case has been cited and followed a number of times since its rendition, and expresses the law of the state. There was no money in the pocket; hence larceny could not possibly be committed. But one having feloniously intended to take whatever was in the pocket, and having done an act to effectuate that purpose, to wit, inserting the hand therein, the crime of attempting to commit larceny was committed.

In People v. Gardner, 144 N. Y. 119, 38 N. E. 1003, 28 L. R. A. 699, 43 Am. St. Rep. 741, the defendant was indicted for an attempt to commit the crime of extortion by attempting to obtain $150 from

Catherine Amos, by threatening to accuse her of keeping a house of prostitution. The Penal Code provides (section 552) that:

"Extortion is the obtaining of property from another with his consent induced by a wrongful use of force or fear or under color of official right."

Section 553:

"Fear such as will constitute extortion may be induced by a threat * * * to accuse a person of any crime."

Catherine Amos testified that for nine years she had been the keeper of a house of prostitution in New York; that the defendant agreed with her that if she would pay $150 to him he would not accuse her of the crime; and that she been acting as a decoy for the police, and trying to induce the defendant to receive the money from her under such circumstances as would render him guilty of a crime, and enable the police to arrest and convict him of it. The conviction was set aside by the General Term, and the discharge of the defendant ordered (73 Hun, 70, 25 N. Y. Supp. 1072, 1075), Mr. Justice Follett saying, inter alia:

"We take it to be a general rule, having few, if any, exceptions, that unless the completed act, accomplished as intended and attempted, will constitute a crime, no step or steps taken to perpetrate the act will amount to a criminal attempt. *· * * So in the case at bar it was a legal impossibility to commit the crime of extortion as against the woman Amos, because she inveigled the defendant to commit the act, and was not put in fear by him."

That was a ruling on the precise point presented in the case at bar, to wit, that the goods not having the character of stolen goods, the completed act, accomplished as intended and attempted, would not constitute a crime, and therefore, as it was a legal impossibility to commit the crime, no steps taken could constitute an attempt. Mr. Justice O'Brien, in his dissenting opinion, said:

"If the reasoning applied to the absence of fear is good, then, unless all the elements essential to constitute the crime are present, an indictment and conviction must fall, because a conviction for an attempt cannot be sustained except in a case where the crime itself is consummated."

The Court of Appeals overruled the General Term, for while the reversal of the judgment was sustained on errors in excluding evidence, the order was modified by granting a new trial, and the opinion, it seems to me, disposed completely of the question of "legal impossibility" as affecting criminal attempts. Judge Earl said:

"The evidence tended to show the existence of every element constituting the crime of extortion except that Mrs. Amos, paying the money exacted by the defendant, was not actuated by fear. It is urged on behalf of the defendant that the fact that his threats did not inspire fear inducing any action on the part of Mrs Amos—an element essential to constitute the completed crime of extortion—renders it impossible to sustain an indictment and conviction for the lesser crime of an attempt at extortion. * * * The threat of the defendant was plainly an act done with intent to commit the crime of extortion, and it tended, but failed, to effectuate its commission, and therefore the act was plainly, within the statute, an attempt to commit the crime. The condition of Mrs. Amos' mind was unknown to the defendant. If it had been such as he supposed, the crime could have been, and probably would have been, consummated. His guilt was just as great as if he had actually succeeded in his purpose. His wicked motive was the same, and he had brought himself fully and precisely within the letter and policy of the law. This

crime, as defined in the statute, depends upon the mind and intent of the wrongdoer, and not on the effect or result upon the person sought to be coerced. * * * In Rex v. Holden, Russ. & Ry. 154, it was held, on an indictment under a statute against passing or disposing of forged bank notes with intent to defraud, that it was no defense that those to whom the notes were passed knew them to be forged, and therefore could not be defrauded. In Reg. v. Goodchild, 2 Carr. & K. 293, and Reg. v. Goodall, 2 Cox, Cr. C. 41, it was held, under a statute making it a felony to administer a poison or use any instrument with intent to procure the miscarriage of any women, that the crime could be committed in a case where the woman was not pregnant. It has been held in several cases that there may be a conviction of an attempt to obtain property by false pretenses although the person from whom the attempt was made knew at the time that the pretenses were false, and could not, therefore, be deceived. * * * So far as I can discover, there is absolutely no authority upholding the contention of the learned counsel for the defendant that, because the defendant did not inspire fear in the mind of Mrs. Amos by his threats, and thus could not have been guilty of the completed crime of extortion, therefore he cannot be convicted of attempting to commit the crime. That contention is, as I believe, also without any foundation in principle or reason."

In People v. Sullivan, 173 N. Y. 122, 65 N. E. 989, 63 L. R. A. 353, 93 Am. St. Rep. 582, Chief Judge Cullen cited with approval People v. Moran, supra. In People v. Mills, 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131, the court again reviewed the subject of attempts; Judge Vann saying:

"Felonious intent alone is not enough, but there must be an overt act shown in order to establish even an attempt. An overt act is one done to carry out the intention, and it must be such as would naturally effect that result, unless prevented by some extraneous cause."

People v. Moran, People v. Gardner, and People v. Sullivan were all cited with approval. In People v. Conrad, 102 App. Div. 566, 92 N. Y. Supp. 606, affirmed in 182 N. Y. 529, 74 N. E. 1122, upon conviction of the crime of attempting to commit the crime of abortion, and in People v. Du Veau, 105 App. Div. 381, 94 N. Y. Supp. 225, upon conviction of the crime of an attempt to commit the crime of robbery in the first degree, the same questions were examined, and the same result was reached; so that it appears that there can be no doubt from those repeated decisions that it is now the settled law of this state, as formulated in People v. Moran, that "the question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his designs."

It is true that we have not found a case where there has been a conviction of the crime of attempting to receive stolen goods. But by our statutes receiving stolen goods knowing them to have been stolen is a substantive crime; and by our statutes an attempt to commit a crime is also a crime; and, the test being as above pointed out, I can see no reason upon principle to differentiate this attempt from any other. In the case at bar the evidence tends to show that the defendant had said to Sadler, prior to his theft of these particular goods, that he would take a roll of these linings; that Sadler took the note to Jaffe; that Jaffe examined it; that Sadler told him where the roll came from; that Jaffe measured the goods and paid for them. These facts, if found, were enough, under the doctrine of the cases cited, to establish the at-

tempt to receive stolen goods knowing them to have been stolen, taken in connection with the other evidence as to knowledge or belief, denial of the purchase, and concealment of the goods.

We have examined the exceptions, and find no error committed to the prejudice of the defendant.

The judgment of conviction should be affirmed. All concur.