NEW YORK PRACTICE REPORTS. 33

Board of Commissioners of Excise of Onondaga Co. agt. Backus.

# SUPREME COURT.

The Board of Commissioners of Excise of Onondaga County, respondents agt. Martin Backus, appellant.

Whenever on a disputed question of *fact* there is a conflict of testimony, the preponderance must be *overwhelming* to authorise a court to disturb the finding either of a jury, or a justice who tries the cause without a jury.

Where, in an action to recover a penalty for a violation of the *excise law of* 1857, for selling strong and spirituous liquors without license, the evidence showed that the witness called for *gin*, and in answer to this call a liquor was given to him, the precise quality of which he could not discriminate, but thought it was *whiskey*:

*Held*, that the defendant being charged with selling strong and spirituous liquors without license, and the complaint specifying gin and whiskey, among other liquors, which he had sold, the evidence was sufficient to establish a violation of the act. Besides the defendant was not at liberty to deny that the liquor was gin, when he furnished it in answer to the call for that liquor.

Where a *board of excise*, for the purpose of ascertaining an offence under the excise law, and bringing to conviction the offender, employ and pay informers and witnesses to go upon his premises and purchase and drink spirituous liquors thereon, the seller thereupon violates the law, and becomes liable to its penalty, where he has no license from the board of excise to protect him.

If the board of excise can be considered as *particeps criminis* with the offender, they are not in *pari delicto* with him; for a penalty is imposed by statute upon one party and not on the other; and the *delictum* not being equal, there is nothing to prevent the statute from being enforced against him.

*It seems*, that the board of excise in such case is not even a *particeps criminis* with the person violating the statute, as they are in effect a corporation, representing the sovereign power of the state, engaged in administering and enforcing its penal laws, and the mode adopted by them to compass this object is the same in principle as that which the state or any of its functionaries, or any municipal body resorts to when it offers a reward for the detection of crime.

*General Term, 5th District, Onondaga, October,* 1864.
*Before* Morgan, Bacon *and* Foster, *Justices.*

Appeal from a judgment for plaintiffs rendered at the circuit court in Syracuse, October, 1864.

Wm. J. Hough, *for defendant, appellant.*
H. Riegel, *for plaintiffs and respondents.*

I. The defendant's proposition is that the plaintiff is *particeps criminis* with the defendant, and therefore cannot

recover. But that proposition is subject to two important qualifications.

1. The plaintiff may recover although he is *particeps criminis*, unless he is in *pari delicto*.

2. When the unlawful act is not *mala in se* but *mala prohibita*, and the statute making the act wrongful, denounces a penalty against the defendant but not against the plaintiff, then the plaintiff will not be held to be in *pari delicto* with the defendant.

The plaintiff cites in support of his position three authorities from the court of appeals, in each of which the plaintiff was *particeps criminis*, and in each of which the plaintiff recovered. I will review them in the inverse order of their relative importance as authority in this case. The case of *Meech* agt. *Stone* (19 *N. Y. R.* 26), is where an action is brought to recover money lost at a gambling establishment. The plaintiff recovers by virtue of the statute giving him the action, and the court go on to say that but for the statute the plaintiff could not have recovered, because the parties were in *pari delicto*. The case of *Ford* agt. *Harrington*, is where a client by the advice of his attorney, conveyed to him land to defraud his creditors. Held that the client could recover back the land from the attorney, notwithstanding the fact that he was *particeps criminis*, for the reason that under the circumstances of that case the parties were not in *pari delicto*. The case of the *State of Indiana* agt. *Leavitt* (13 *N. Y.* 162), is the one which the plaintiff's counsel considers conclusive of this case. That case is where the North American Trust and Banking Company had purchased Indiana state bonds, and gave therefor the notes of the bank, payable on time, which notes the bank was not authorized to make, and from issuing which it was prohibited by statute under a penalty. Held, that notwithstanding the plaintiff was *particeps criminis*, it could nevertheless recover, for the reason that it was not in *pari delicto*. At *page* 183 of this case,

Mr. Justice SELDEN in delivering the opinion of the court, after commenting with approval upon various classes of English cases which proceed upon this principle, goes on to say : " There are, undoubtedly, other cases in which the parties are not equally guilty, but it is safe to assume that whenever the statute imposes a penalty upon one party and not upon the other, they are not to be regarded as in *pari delicto*. In the case of *Mount* agt. *Waite* (7 *John*. 434), Chancellor KENT allowed the plaintiff to recover back money paid for insuring lottery tickets, contrary to the policy of an act passed in 1807, on the ground that the parties were not in *pari delicto*, although *particeps criminis*.

II. The board of commissioners of excise of the county of Onondaga, is a corporate body created by statute, and acts by a majority of voices by resolution. And there is no evidence whatever, that that board ever authorized or adopted the individual acts of Lyman Barber, which are claimed to place the board in the condition of *particeps criminis*. And I claim that the board as a corporate body, are no more affected by such acts than by the unauthorized acts of any other individual.

III. There is no such defence set up in the answer. The only defence set up in the answer is a general denial. And it is settled that a general denial only puts in issue the facts stated in the complaint (*see Van Santvoord's Pleadings*, 405 *to* 412). There are a few cases where the court seem to hold that if the parties take issue upon a mere general conclusion, without requiring the pleadings to be made more definite, as when the parties take issue upon the general conclusion that the defendant is indebted to the plaintiff for goods sold and delivered, the defendant may introduce any proof going to show a want of indebtedness, as payment. Whether that rule is or is not correct, it is sufficient to say of it, that it is not applicable to this case. The complaint in this case sets out the wrongful acts committed by the defendant, with the circumstances of time and place,

with precision and definiteness. It sets out the fact that defendant had no license. It refers to the act of the legislature that is claimed to have been violated by its title and the date of its passage, and then alleges by way of showing what the plaintiff claims : " Whereby the defendant hath forfeited the sum of fifty dollars, and become indebted unto the plaintiff therefor." Certainly a general denial to such a complaint must be presumed to take issue upon the facts stated in the complaint, and not merely upon the general conclusion following the statement of facts intended to show the theory of the action.

IV. The evidence was admissible as bearing upon the credibility of the witness, showing that he was interested in the event of the action, and therefore did not call for an objection as not being within the pleadings.

By the court, BACON, J. This action was brought by the plaintiffs as commissioners of excise of Onondaga county, to recover the penalty given by the statute for a violation of the excise law by the defendant, in selling spirituous liquors in quantities less than five gallons, to be drank on his premises. On the trial the plaintiffs proved by the witness Quackenbush, that he was present in the store of defendant when White, the other witness, called for gin, and that liquor was given him by a woman in charge of the store, which he drank and paid for, and that he thinks the defendant received the money and gave back the change. White swears that on the occasion spoken of by Quackenbush, he called for gin and got some liquor which he drank and thought it was whiskey, and that he paid the defendant for the liquor thus obtained. The defendant was sworn, and denied that he ever saw either of these persons at his store, and that he ever received payment from them or either of them, for any liquor sold in his store. On cross-examination, both of the witnesses for the plaintiffs testified that they were employed by Lyman Baker, one of the

commissioners, to look after and detect persons engaged in violating the excise law, and that they went into defendant's store for that purpose, and that they were paid a compensation for their services whenever a party complained of was convicted.

The defendant's counsel alleges three grounds on which he claimed that the judgment rendered for the plaintiffs should be reversed.

I. That there is an entire failure of proof to connect the defendant with the sale of the liquor; that there is but slight proof of his presence, and that his testimony fully rebuts this evidence. On this point it is only necessary to say that this was purely a question of fact. The witness White swore expressly that the defendant was present, and that he paid him for the liquor, and although the defendant swore that he was not present, this court was entirely at liberty to credit the one and disbelieve the other; and whenever on a disputed fact there is a conflict of testimony, the preponderance must be overwhelming to induce a court to disturb the finding either of a jury or a justice who tries the case without the intervention of a jury. It is almost superfluous to say that this is not such a case.

II. It is insisted that the finding of the court that the defendant sold to White " a glass of gin," is wholly without evidence to support it. This is founded upon the claim that the evidence, if it proves anything, clearly shows that the liquor which was procured and drank by White was " whiskey," and not gin, and that whiskey is not gin in the eye of the law, whatever it might be in the eye of the imbiber. The evidence shows that the witness called for gin, and in answer to this call a liquor was given to him the precise quality of which he could not discriminate, but thought it was whiskey. Now the offence with which the defendant was charged, and of which he was convicted, was for selling strong and spirituous liquors without license,

and was the gravamen of the complaint, and under this general charge the pleader specified whiskey, wine, gin, rum, brandy and beer, not knowing under what disguise the liquor in question would appear. I suppose if the finding had been that the defendant sold, and the party purchasing drank on the premises a " glass of spirituous liquors," the finding would have been sufficiently specific, and the conclusion inevitable, that the defendant had violated the statute and incurred the penalty ; and this, in effect, is the finding. The article might have been called whiskey, or brandy, or rum, probably with as near an approach to accuracy as to call it gin, and it would very likely pass muster as well under one name as the other. If the person who imbibed the liquor was unable to say definitely, when it came to him " in such a questionable shape," what its true name was, it would be a little hard to require the court to christen it properly without the privilege of testing its quality (if that could be deemed a privilege), on pain of having its judgment upset for lack of a proper appreciation of the taste and character of the liquor, and a mistake as to the style and title, which by a careful analysis it might fairly claim. It is a proper case for the application of the maxim " *de minimis non curat lex*," and if critically and technically not entirely correct, it comes near enough to the fact, and finds sufficient warrant in the testimony to be adopted as the basis of the judgment of the court. To this also it might be added, that inasmuch as the witness called for gin, and the liquor in question was furnished to him in response to such application, it does not lie in the mouth of the defendant to deny that it was gin, although in point of fact it might have been whiskey, and nothing else. The defendant both christened it and sold it as gin, and he cannot be allowed to repudiate his own offspring when its legitimacy is called in question. As to him, gin it is, and gin it must be. There is, therefore, nothing in this exception.

III. It is finally insisted by the counsel for the defendant, with great earnestness and apparent gravity, that the plaintiffs cannot recover because they are *particeps criminis* with the defendant in the violation of a penal statute. It is claimed to be a principle of law as well as of public policy, that no one shall be aided whose cause of action is founded upon an illegal or immoral act; and that the plaintiffs having furnished the appliances which were used to induce the defendant to violate the law, they are participants with him in the crime, and the court will not lend its assistance to enable them to enforce the law and recover the penalty. To sustain this proposition the counsel invokes the aid of the familiar authorities which declare that whenever a contract is. made or a combination is entered into between parties, having for its ultimate object the violation of a positive law or a principle of public policy, or to perpetuate a fraud upon third parties, the court will not lend their aid in enforcing it, but leave the respective parties just where by their acts they have placed themselves. Under such a condition of things, it is claimed that the maxim *" in pari delicto potior est conditio defendentis,"* invariably governs the action of the courts. But in order to shield a confessed guilty party from the consequences of his acts, and deprive the plaintiff of the remedy he seeks, it is essential not only that he be a *" particeps criminis,"* but he must be in *" pari delicto,"* with his adversary. This could not be averred of the plaintiffs in this suit, were they acting in a purely personal and private capacity, and seeking and actually securing to themselves some individual benefit or advantage. The authorities very clearly establish the principle that where there are degrees of wrong, the courts can and do give relief in many cases against the more guilty party. The case of *Ford* agt. *Harrington* (16 *N. Y.* 285), was the application of this principle to the case of an attorney who had induced his client to convey land to him for the purpose of defrauding his creditors.

The transaction was wholly illegal and intentionally fraudulent, and the plaintiff participated in the fraud, and thus was *in delicto*, but he was not *in pari delicto*, and therefore, he was allowed to recover. In the case of *Freelove* agt. *Cole* (41 *Barb.* 318), the court applied the same doctrine to the relief of a grantor who had made a conveyance to defraud creditors, because the parties did not stand upon an equal footing, and the same degree of dereliction did not apply to the plaintiff as existed in the case of the defendant.

The precise principle applicable to the case, is announced by the court of appeals in *Tracy* agt. *Talmadge* (14 *N. Y.* 162), in the proposition that where parties to a contract or transaction not *malum in se*, but prohibited by a statute, are not equally guilty, courts may and do afford relief to the less guilty party. And the degree of guilt can always be determined by the inquiry, upon which party the law imposes a penalty, and whenever a penalty is imposed upon one party and not the other, they are never to be regarded as *in pari delicto*. The drinking of the liquor on the premises, or procuring a party to drink it, were neither of them acts evil in themselves, or condemned by the statute. And but for the prohibition contained in the statute, the selling of the liquor by the defendant would have been in the eye of the law an innocent transaction. But by the statute, this act, uncondemned by the unwritten law, whatever might be the sentence pronounced " *in foro conscientiæ*," was prohibited under a penalty. " The statute," as was said by Lord MANSFIELD in an analogous case (*Browning* agt. *Morris, Camp.* 790), " has made the distinction by making the criminal, for the penalties are all on one side." The plaintiffs are subject to no penalty, but the defendant is, and the *delictum* not being equal, there is nothing to prevent the remedy provided by the statute from being enforced against him. In the case of *Mount* agt. *Waite* (7 *John.* 434), Chancellor KENT applied this prin-

ciple to the case of a plaintiff who sued to recover back money paid for insuring lottery tickets, a thing prohibited by law, under a penalty imposed upon the party insuring, but not upon the party procuring the insurance. The plaintiff, he says, violated no statute in making the contract, nor was the agreement *malum in se*, but the defendant violated the law, and being the more guilty party, the other was allowed to recover.

It will thus be seen that the defendant fails to bring the plaintiffs within the scope of a principle vital to his assumed defence, and I think it would not be difficult to show that they are not within the category that is claimed to embrace them with the defendant as participants in crime. The plaintiffs are in effect a corporation, and they represent in their action in this case the sovereign power of the state engaged in administering and enforcing its penal laws. The defendant is an alleged violator of the laws, whose detection and punishment it is for the public interest to secure. The mode the plaintiffs adopt to compass this is precisely that which the state or any of its functionaries, or any municipal body resorts to when it offers a reward for the detection of crime, promises indemnity to a coadjutor or co-conspirator, or presents pecuniary inducements to informers to testify, by agreeing to share with them the spoils of victory obtained through their aid. This has never been dreamed of as a good plea in bar to the maintenance of an indictment, or any action whatever, brought in behalf of the public authorities to punish crime or collect penalties imposed by law. If there had been anything in the objection it would have seemed proper to apply it either to the exclusion or the impeachment of the witnesses, who in this case, were by pecuniary persuasions, induced to furnish the evidence necessary to convict the defendant. But no such objection was taken, or could for a moment have been sustained. "The public," says Greenleaf, "has an interest in the suppression of crime and the conviction

of criminals. It is, therefore, with a view to stir up greater vigilance in apprehending and convicting criminals, that rewards are given, and it would defeat the object of the legislature to narrow the means of conviction by means of those rewards, and to exclude testimony which otherwise would have been admissible" (*Green. on Ev.* § 412). The use of decoy letters and base coin to detect plunderers of the public mails and counterfeiters of the currency, stands upon the same foundation, and has ever been employed without bringing upon those who use these means the imputation either of crime or of participation therein. The mode adopted by the plaintiffs to bring to light the malfeasance of the defendant, had no necessary connection with his violation of law. He exercised his own volition, independent of all outside influence or control. Even if inducements to commit crime could be assumed to exist in this case, the allegation of the defendant would be but the repetition of the plea as ancient as the world, and first interposed in Paradise : " The serpent beguiled me and I did eat." That defence was overruled by the great Lawgiver, and whatever estimate we may form, or whatever judgment pass upon the character or conduct of the tempter, this plea has never since availed to shield crime or give indemnity to the culprit, and it is safe to say that under any code of civilized, not to say christian ethics, it never will.

The judgment in this case was right in all respects, and must be affirmed.