## Court of Appeals.

April, 1906.

## Supreme Court—Appellate Division—First Department.

## THE PEOPLE v. SAMUEL JAFFE.

(185 N. Y. 497, reversing 112 App. Div. 516; reargument refused, 186 N. Y.—memo.)

1. ATTEMPT TO RECEIVE STOLEN PROPERTY.

Certain goods which had been stolen were retaken by the true owner, and confessedly lost their character as stolen property. They were subsequently sent to the defendant who took them, and paid for them, in the belief that they were stolen. *Held*, that a conviction for an attempt could not be sustained.

2. SAME.
    That knowledge was a material ingredient of the offense, and that knowledge could not exist unless the property had in fact been stolen or larcenously appropriated.
3. ATTEMPTS GENERALLY.
    That if all which an accused person intends to do would, if done, constitute no crime, it cannot be a crime to attempt to do, with the same purpose, a part of the thing intended (following 1 Bish. Crim. L. [7th Ed.] § 747).

The defendant, Jaffe, was indicted for the crime of criminally receiving stolen goods, knowing the same to have been stolen. He was subsequently convicted of an attempt to commit the said crime, and judgment of conviction was rendered by the Court of General Sessions of the Peace in and for the city and county of New York on the 24th day of May, 1904.

He took an appeal to the Appellate Division of the Supreme Court, First Department. This appeal was argued upon the 20th day of March, 1906, and the judgment of conviction was unanimously affirmed upon the 20th day of April, 1906. The following opinion was handed down:

Henry W. Unger (Abraham Levy with him on the brief), for the appellant.

Robert C. Taylor (William Travers Jerome, district attorney), for the respondent.

CLARKE, J.: The defendant was indicted for the crime of criminally receiving stolen property, in that " twenty yards of cloth of the value of twenty-five cents each yard, of the goods, chattels and personal property of F. Norton Goddard, Wilmer A. Baldwin and Joseph Mathers, copartners in trade, then and there doing business in and by the firm name and style of J. W. Goddard & Sons, by a certain person or persons to the grand jury aforesaid unknown then lately before feloniously stolen,

taken and carried away from the said copartners unlawfully
and unjustly did feloniously receive and have, the said Samuel
Jaffe, then and there well knowing the said goods, chattels and
personal property to have been feloniously stolen, taken and
carried away."

Section 550 of the Penal Code provides that " a person who
buys or receives any stolen property . . . knowing the
same to have been stolen . . . is guilty of criminally re-
ceiving such property." The gist, therefore, of the crime
charged in the indictment was the receiving stolen property,
knowing the same to have been stolen. Upon such charge, the
People were required to prove that the property received was,
as matter of fact, stolen property, and that at the time defend-
ant received the same he knew that it had been stolen.

The proof shows that some time prior to October 6, 1902,
the date laid in the indictment, a clerk in the employ of God-
dard & Sons stole goods from that firm and, as he claims, sold
them to the defendant, who kept a small tailor shop. No charge
is made against the defendant with respect to these earlier
transactions; their relevancy was upon the question of the de-
fendant's knowledge that the goods which the indictment
charges he received were stolen. The proof as to the goods
covered by the indictment tended to show that Sadler, the
clerk, stole the roll of cloth, which he rewrapped and placed in
a certain place in the store, from which place Donegan, another
employee, took it to a certain shoe store, at which place, some
three days afterwards, Sadler got the roll. Goddard & Sons
had discovered the facts, or Sadler had made a confession;
at any rate, Mr. Marratt, the manager of Goddard & Sons, was
at the shoe store when Sadler got the roll, and followed him
out and went with him to police headquarters, followed by sev-
eral detectives. At police headquarters the package was opened,
Marratt identified the goods as the property of Goddard & Sons,
cut the piece up into three parts and marked each for identifica-

tion. Marratt then carried the cloth up as far as Twenty-third street and handed it to Sadler. Marratt testified that in everything he did he acted as the representative of the Goddards with full authority, and that it was done pursuant to a prior arrangement with the police detective who was in charge; that Sadler was sent to the shoe store pursuant to that arrangement, and that his instructions, the cutting of the goods and his going to the place of defendant Jaffe, were all pursuant to this arrangement. " His authority was to endeavor to sell these goods to the defendant." Sadler, in accordance with this arrangement and these instructions, took the cloth to Jaffe, who gave him $2.50. The evidence is sufficient to have warranted the jury to find that the defendant received the goods believing them to have been stolen. So, also, the evidence is sufficient to warrant the finding that the goods had been stolen.

The district attorney conceded upon the trial and the entire case, from first to last, by all parties, was tried upon the assumption, however, that when these goods were received by the defendant they had lost the character of being stolen goods. This may be clearly demonstrated from this extract from the record: " The court: It is conceded here that the property in question was first stolen . . . and subsequently taken back into the posession of Goddard & Company.

" Mr. Jerome. So that at the time of its alleged receipt by this defendant, or prior to the time of its alleged receipt by this defendant, its possession had been recovered by the owner.

"Mr. Levy. And before it had gotten into the possession of the defendant ?

" Mr. Jerome. Yes.

" Mr. Levy. In other words, there had been a recovery by the owners of the property.

" Mr. Jerome. So that at the time the goods were actually conveyed to this defendant they were not then and there stolen goods.

" Mr. Levy. They had lost the character of being stolen goods.

" Mr. Jerome. That is entirely correct."

The district attorney's brief upon this appeal states as follows: " Various passages in the record show that the People conceded on the trial (as they now concede on this appeal) that, because of the interception the goods lost their character as stolen property." Upon those concessions, and upon this record, therefore, the question as to whether or not, by retaking the stolen goods for a short time, marking them for identification, and redelivering them to the thief for the purpose of having him deliver them to the receiver, under the belief on the receiver's part that they were stolen—in short, setting a trap for him—destroyed their quality as stolen goods and prevented conviction of the crime charged in the indictment, is not in the case and upon it we express no opinion. A conviction of an attempt to commit the crime charged was asked and the jury upon that proposition found the defendant guilty.

The question here is, was the defendant properly found guilty of an attempt to receive stolen property, knowing the same to have been stolen, when it is conceded that the goods were not stolen property when received by him and, therefore, it was impossible for him to know that they were stolen. Can he be convicted of the attempt, when the crime attempted was impossible of commission ?

Section 34 of the Penal Code provides that "An act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime." And section 35 thereof provides that, " upon the trial of an indictment, the prisoner may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime."

The learned counsel for the defendant states his position as follows: " The learned district attorney concedes it was legally impossible for the defendant to commit the crime charged in the indictment upon the state of facts disclosed at the trial. Therefore, the question presents itself, whether one can in contemplation of our Penal Code and the criminal law so attempt to do what is legally impossible as to make himself punishable for the attempt to commit the legal impossibility."

In People v. Moran (123 N. Y. 254; s. c. 8 N. Y. Crim. 105) the indictment charged the defendant with an attempt to commit the crime of grand larceny in the second degree, by attempting to steal from the person of an unknown woman certain goods unknown, of the alleged value of ten dollars. The proof showed that the defendant was seen to thrust his hand into the pocket of a woman and withdraw it empty. The woman was lost in the crowd, and, of course, no proof was offered to show that she had anything of value in her pocket which could have been the subject of larceny. Ruger, Ch. J., said: " We are of the opinion that the evidence was sufficient to authorize the jury to find the accused guilty of the offense charged. It was plainly inferable from it that an intent to commit larceny from the person existed, and that the defendant did an act tending to effect its commission, although the effort failed. The language of the statute seems to us too plain to admit of doubt, and was intended to reach cases where an intent to commit a crime and an effort to perpetrate it, although ineffectual, co-existed. Whenever the *animo furandi* exists, followed by acts apparently affording a prospect of success and tending to render the commission of the crime effectual, the accused brings himself within the letter and intent of the statute. To constitute the crime charged there must be a person from whom the property may be taken, an intent to take it against the will of the owner; and some act performed tending to accomplish it, and when these things concur, the crime has, we

think, been committed, whether property could, in fact, have been stolen or not. In such cases, the accused has done his utmost to effect the commission of the crime, but fails to accomplish it for some cause not previously apparent to him. *The question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design.* So far as the thief is concerned, the felonious design and action are then just as complete as though the crime could have been, or, in fact, had been committed, and the punishment of such offender is just as essential to the protection of the public as of one whose design have been successful." This case has been cited and followed a number of times since its rendition, and expresses the law of the State. There was no money in the pocket; hence larceny could not possibly be committed. But one having feloniously intended to take whatever was in the pocket, and having done an act to effectuate that purpose, to wit, inserting the hand therein, the crime of attempting to commit larceny was committed.

In People v. Gardner (144 N. Y. 119; s. c. 9 N. Y. Crim. 404), the defendant was indicted for an attempt to commit the crime of extortion, by attempting to obtain $150 from Catherine Amos by threatening to accuse her of keeping a house of prostitution. The Penal Code provides (§ 552), that "Extortion is the obtaining of property from another with his consent induced by a wrongful use of force or fear or under color of official right." Section 553: "Fear such as will constitute extortion may be induced by a threat . . . to accuse a person of any crime." Catherine Amos testified that for nine years she had been the keeper of a house of prostitution in New York; that the defendant agreed with her that if she would pay him $150 to him he would not accuse her of the crime, and that she had been acting as a decoy for the police and trying to induce the defendant to receive the money from her under such circum-

stances as would render him guilty of a crime and enable the police to arrest and convict him of it.    The conviction was set aside by the General Term and the discharge of the defendant ordered (73 Hun, p. 70; s. c. 9 N. Y. Crim. p. 128), Mr. Justice FOLLETT saying, *inter alia,* " We take it to be a general rule, having few, if any exceptions, that unless the completed act, accomplished as intended and attempted, will constitute a crime, no step or steps taken to perpetrate the act will amount to a crimisal attempt. . . .    So in the case at bar it was a legal impossibility to commit the crime of extortion as against the woman Amos, because she inveigled the defendant to commit the act and was not put in fear by him." That was a ruling on the precise point presented in the case at bar, to wit, that the goods not having. the character of stolen goods, the completed act, accomplished as intended and attempted, would not constitute a crime, and, therefore, as it was a legal impossibility to commit the crime, no steps taken could constitute an attempt. Mr. Justice O'BRIEN, in his dissenting opinion, said: " If the reasoning applied to the absence of fear is good, then, unless all the elements essential to constitute the crime are present, an indictment and conviction must fall, because a conviction for an attempt cannot be sustained except in a case where the crime itself is committed." The Court of Appeals overruled the General Term, for while the reversal of the judgment was sustained on errors in excluding evidence, the order was modified by granting a new trial, and the opinion, it seems to me, disposed completely of the question of " legal impossibility " as affecting criminal attempts.    Judge EARL said: " The evidence tended to show the existence of every element constituting the crime of extortion except that Mrs. Amos in paying the money exacted by the defendant was not actuated by fear.    It is urged on behalf of the defendant that the fact that his threats did not inspire fear inducing any action on the part of Mrs. Amos, an element essential to constitute the completed crime

of extortion, renders it impossible to sustain an indictment and conviction for the lesser crime of an attempt at extortion.

. . . The threat of the defendant was plainly an act done with intent to commit the crime of extortion, and it tended, but failed, to effect its commission, and, therefore, the act was plainly within the statute an attempt to commit the crime. The condition of Mrs. Amos' mind was unknown to the defendant. If it had been such as he supposed, the crime could have been and probably would have been consummated. His guilt was just as great as if he had actually succeeded in his purpose. His wicked motive was the same, and he had brought himself fully and precisely within the letter and policy of the law. *This crime as defined in the statute depends upon the mind and intent of the wrongdoer,* and not on the effect or result upon the person sought to be coerced. . . . In Rex v. Holden (Russ. & Ry. 154), it was held on an indictment under a statute against passing or disposing of forged bank notes, with intent to defraud, that it was no defence that those to whom the notes were passed knew them to be forged, and, therefore, could not be defrauded. In Reg. v. Goodchild (2 Carr. & Kir. 293) and Reg. v. Goodall (2 Cox Cr. C. 41), it was held under a statute making it a felony to administer poison or use any instrument with intent to procure the miscarriage of any woman, that the crime could be committed in a case where the woman was not pregnant. It has been held in several cases that there may be a conviction of an attempt to obtain property by false pretences, although the person from whom the attempt was made knew at the time that the pretences were false, and could not, therefore, be deceived. . . So far as I can discover there is absolutely no authority upholding the contention of the learned counsel for the defendant, that because the defendant did not inspire fear in the mind of Mrs. Amos by his threats, and thus could not have been guilty of the completed crime of extortion, therefore, he cannot be convicted of at-

tempting to commit the crime. That contention is, as I believe, also without any foundation in principle or reason."

In People v. Sullivan (173 N. Y. 122; s. c. 17 N. Y. Crim. 180), Judge CULLEN cited with approval People v. Moran (*supra*). In People v. Mills (178 N. Y. 274; s. c. 18 N. Y. Crim. 269), the court again reviewed the subject of attempts, Judge VANN saying: " Felonious intent alone is not enough, but there must be an overt act shown in order to establish even an attempt. An overt act is one done to carry out the intention, and it must be such as would naturally effect that result unless prevented by some extraneous cause." People v. Moran, People v. Gardner and People v. Sullivan were all cited with approval. In People v. Conrad (102 App. Div. 566, affd. 182 N. Y. 529, *supra* p. 259), upon conviction of the crime of attempting to commit the crime of abortion, and in People v. DuVeau (105 App. Div. 381, *supra* p. 268), upon conviction of the crime of an attempt to commit the crime of robbery in the first degree, the same questions were examined and the same result was reached. So that it appears that there can be no doubt from these repeated decisions that it is now the settled law of this State, as formulated in People v. Moran, that " The question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design."

It is true that we have not found a case where there has been a conviction of the crime of attempting to receive stolen goods. But by our statutes, receiving stolen goods, knowing them to have been stolen, is a substantive crime; and by our statutes, an attempt to commit a crime is also a crime; and the test being as above pointed out, I can see no reason upon principle to differentiate this attempt from any other. In the case at bar, the evidence tends to show that the defendant had said to Sadler, prior to his theft of these particular goods, that he

would take a roll of these linings; that Sadler took the roll to Jaffe; that Jaffe examined it; that Sadler told him where the roll came from; that Jaffe measured the goods and paid for them. These facts, if found, were enough under the doctrine of the cases cited, to establish the attempt to receive stolen goods, knowing them to have been stolen, taken in connection with the other evidence as to knowledge or belief, denial of the purchase and concealment of the goods.

We have examined the exceptions, and find no error committed to the prejudice of the defendant.

The judgment of conviction should be affirmed.

O'BRIEN, P. J., INGRAHAM, McLAUGHLIN and HOUGHTON, JJ., concurred.

Judgment affirmed.

Jaffe subsequently took an appeal to the Court of Appeals. This appeal was argued upon the 11th day of June, 1906. Upon the 21st day of June, 1906, the judgment of conviction was reversed, and the defendant was discharged. The following opinion was handed down by the Court of Appeals:

Henry W. Unger and Abraham Levy, for appellant.

William Travers Jerome, district attorney (Robert C. Taylor, of counsel), for respondent.

WILLARD BARTLETT, J.:

The indictment charged that the defendant, on the 6th day of October, 1902, in the county of New York, feloniously received twenty yards of cloth, of the value of twenty-five cents a yard, belonging to the copartnership of J. W. Goddard & Son, knowing that the said property had been feloniously stolen, taken and carried away from the owners. It was found, under

section 550 of the Penal Code, which provides that a person who buys or receives any stolen property, knowing the same to have been stolen, is guilty of criminally receiving such property. The defendant was convicted of an attempt to commit the crime charged in the indictment. The proof clearly showed, and the district attorney conceded upon the trial, that the goods which the defendant attempted to purchase on October 6th, 1902, had lost their character as stolen goods at the time when they were offered to the defendant and when he sought to buy them. In fact, the property had been restored to the owners, and was wholly within their control, and was offered to the defendant by their authority and through their agency. The question presented by this appeal, therefore, is whether, upon an indictment for receiving goods, knowing them to have been stolen, the defendant may be convicted of an attempt to commit the crime, where it appears without dispute that the property which he sought to receive was not, in fact, stolen property.

The conviction was sustained by the Appellate Division chiefly upon the authority of the numerous cases in which it has been held that one may be convicted of an attempt to commit a crime, notwithstanding the existence of facts unknown to him which would have rendered the complete perpetration of the crime itself impossible. Notably among these are what may be called the pickpocket cases, where, in prosecutions for attempts to commit larceny from the person by pocket picking, it is held not to be necessary to allege or prove that there was anything in the pocket which could be the subject of larceny. (*Commonwealth v. McDonald,* 5 Cush. 365; *Rogers v. Commonwealth,* 5 S. & R. 463; *State v. Wilson,* 30 Conn. 500; *People v. Moran,* 123 N. Y. 254, s.c. 8 N. Y. Crim. 105.

Much reliance was also placed in the opinion of the learned Appellate Division upon the case of *People v. Gardner* (144 N. Y. 119; 9 N. Y. Crim. Rep. 404), where a conviction of

an attempt to commit the crime of extortion was upheld, although the woman from whom the defendant sought to obtain money by a threat to accuse her of a crime was not induced to pay the money by fear, but was acting at the time as a decoy for the police, and hence could not have been subjected to the influence of fear.

In passing upon the question here presented for our determination, it is important to bear in mind precisely what it was that the defendant attempted to do. He simply made an effort to purchase certain specific pieces of cloth. He believed the cloth to be stolen property, but it was not such in fact. The purchase, therefore, if it had been completely effected, could not constitute the crime of receiving stolen property, knowing it to be stolen, since there could be no such thing as knowledge on the part of the defendant of a non-existent fact, although there might be a belief on his part that the fact existed. As Mr. Bishop well says, it is a mere truism that there can be no receiving of stolen goods which have not been stolen. (2 Bishop's New Crim. Law, § 1140.) It is equally difficult to perceive how there can be an attempt to receive stolen goods, knowing them to have been stolen, when they have not been stolen in fact.

The crucial distinction between the case before us and the pickpocket cases, and others involving the same principle, lies not in the possibility or impossibility of the commission of the crime, but in the fact that in the present case the act, which it was doubtless the intent of the defendant to commit, would not have been a crime if it had been consummated. If he had actually paid for the goods which he desired to buy and received them into his possession, he would have committed no offense under section 550 of the Penal Code, because the very definition in that section of the offense of criminally receiving property makes it an essential element of the crime that the

accused shall have known the property to have been stolen or wrongfully appropriated in such manner as to constitute larceny. This knowledge being a material ingredient of the offense, it is manifest that it cannot exist unless the property has in fact been stolen or larcenously appropriated. No man can know that to be so which is not so in truth and in fact. He may believe it to be so, but belief is not enough under this statute. In the present case it appeared not only by the proof but by the express concession of the prosecuting officer that the goods which the defendant intended to purchase had lost their character as stolen goods at the time of the proposed transaction. Hence, no matter what was the motive of the defendant, and no matter what he supposed, he could do no act which was intrinsically adapted to the then present successful perpetration of the crime denounced by this section of the Penal Code, because neither he nor any one in the world could know that the property was stolen property, inasmuch as it was not in fact stolen property.

In the pickpocket cases the immediate act which the defendant had in contemplation was an act which, if it could have been carried out, would have been criminal, whereas in the present case the immediate act which the defendant had in contemplation (to wit, the purchase of the goods which were brought to his place for sale) could not have been criminal under the statute, even if the purchase had been completed, because the goods had not in fact been stolen, but were at the time when they were offered to him in the custody and under the control of the true owners.

If all which an accused person intends to do would, if done, constitute no crime, it cannot be a crime to attempt to do, with the same purpose, a part of the thing intended. (1 Bishop's Crim. Law [7th ed.], sec. 747.) The crime of which the defendant was convicted necessarily consists of three elements: first, the act; second, the intent; and third, the knowledge of

an existing condition. There was proof tending to establish two of these elements, the first and second, but none to establish the existence of the third. This was knowledge of the stolen character of the property sought to be acquired. There could be no such knowledge. The defendant could not know that the property possessed the character of stolen property when it had not in fact been acquired by theft.

The language used by RUGER, Ch. J., in People v. Moran (123 N. Y. 254; 8 N. Y. Crim. Rep. 105), quoted with approval by EARL, J., in People v. Gardner (144 N. Y. 119; 9 N. Y. Crim. Rep. 404), to the effect that " the question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design," although accurate in those cases, has no application to a case like this, where, if the accused had completed the act which he attempted to do, he would not be guilty of a criminal offense. A particular belief cannot make that a crime which is not so in the absence of such belief. Take, for example, the case of a young man who attempts to vote, and succeeds in casting his vote under the belief that he is but twenty years of age, when he is, in fact, over twenty-one, and a qualified voter. His intent to commit a crime, and his belief that he was committing a crime, would not make him guilty of any offense under these circumstances, although the moral turpitude of the transaction on his part would be just as great as it would if he were in fact under age. So, also, in the case of a prosecution under the statute of this State, which makes it rape in the second degree for a man to perpetrate an act of sexual intercourse with a female not his wife under the age of eighteen years. There could be no conviction if it was established upon the trial that the female was in fact over the age of eighteen years, although the defendant believed her to be younger and intended to commit the crime. No matter how reprehensible would be his act in morals, it would

not be the act forbidden by this particular statute. "If what a man contemplates doing would not be in law a crime, he could not be said in point of law to intend to commit the crime. If he thinks his act will be a crime this is a mere mistake of his understanding where the law holds it not to be such, his real intent being to do a particular thing. If the thing is not a crime he does not intend to commit one whatever he may erroneously suppose." (1 Bishop's Crim. Law [7th ed.], sec. 742.)

The judgment of the Appellate Division and of the Court of General Sessions must be reversed and the defendant discharged upon this indictment, as it is manifest that no conviction can be had thereunder. This discharge, however, in no wise affects the right to prosecute the defendant for other offenses of a like character concerning which there is some proof in the record, but which were not charged in the present indictment.

CHASE, J. (dissenting):

I dissent. Defendant, having with knowledge repeatedly received goods stolen from a dry goods firm by one of its employees, suggested to the employee that a certain specified kind of cloth be taken, he was told by the employee that that particular kind of cloth was not kept on his floor, and he then said that he would take a roll of a certain Italian cloth. The employee then stole a roll of the Italian cloth and carried it away, but left it in another store, where he could subsequently get it for delivery to the defendant. Before it was actually delivered to the defendant the employers discovered that the employee had been stealing from them and they accused him of the thefts. The employee then confessed his guilt and told them of the piece of cloth that had been stolen for the defendant, but had not actually been delivered to him. The roll of cloth so stolen was then taken by another employee of the firm, and it was arranged at the police headquarters that the employee who

had taken the cloth should deliver it to the defendant, which he did, and the defendant paid the employee about one-half the value thereof. The defendant was then arrested, and this indictment was thereafter found against him. That the defendant intended to commit a crime is undisputed. I think the record shows an attempt to commit the crime of criminally receiving property as defined in sections 550 and 34 of the Penal Code, within the decisions of this court in People v. Moran (123 N. Y. 254; 8 N. Y. Crim. Rep. 105), and People v. Gardner (144 N. Y. 119; 9 N. Y. Crim. Rep. 404).

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN and WERNER, JJ., concur with WILLARD BARTLETT, J.; CHASE, J., dissents in memorandum.

Judgment of conviction reversed, etc.

Subsequently and upon October 22nd, 1906, an application for a reargument was submitted by the People.

Robert C. Taylor, for the motion.

The reversal is based upon the authority of 1 Bish. Crim. Law (7th ed.), § 747. This very section of Bishop had been expressly cited in the opinion of FOLLETT, J., who wrote the prevailing opinion of the General Term which had reversed the conviction in the case of People v. Gardner (73 Hun, 66; s. c. 9 N. Y. Crim. 124). The Court of Appeals, however, subsequently repudiated the reasoning of the General Term, as based upon no authority, and without any foundation in principle or reason. (People v. Gardner, 144 N. Y. 119, 126; s. c. 9 N. Y. Crim. 404, 409.)

Henry W. Unger and Abraham Levy opposed.

Upon the 26th day of October, 1906, the court handed down the following memorandum:

" Motion for reargument denied." (186 N. Y. , memo.)

## NOTE ON TRAPS AND ATTEMPTS.

The three cases of Conrad, DuVeau and Jaffe, above printed, justify brief comment upon the law of traps and attempts as the New York courts have stated it.

### *I. As to Traps.*

The New York cases make it plain that the existence of a trap does not, *per se*, constitute any defense, unless its effect is, in some way, to destroy some essential element of the crime. This doctrine was strongly stated in the Mills case, already reported in this series. (See People v. Mills, stay refused, 41 Misc. 195; s. c. 17 N. Y. Crim. 466; judgt. aff'd 91 App. Div. 333; s. c. 18 N. Y. Crim. 125; judgt. aff'd 178 N. Y. 274; s. c. 18 N. Y. Crim. 269; 67 L. R. A. 131.)

The Mills case was cited and followed by the Conrad, DuVeau and Jaffe cases (*supra*).

If the authorities, outside of New York, are examined, cases will be found which intimate that traps are against public policy. The New York courts had never announced any such doctrine; but, in fact, doctrines quite to the contrary. (See Bd. Excise v. Backus, 29 How. Pr. 33, 42; People v. Krivitzky, 168 N. Y. 182, s. c. 16 N. Y. Crim. 62.) Their general attitude is illustrated by the cases collected in the note appended to the report of the Mills opinion, and entitled "The Competency of Evidence Irregularly Obtained." (18 N. Y. Crim. at page 309.)

It is believed, however, that the Mills opinions overrule, in New York at least, any sentimental contention that it is against public policy to propagate crime by laying traps. The contention received its strongest possible statement in the dissenting opinions of O'BRIEN and BARTLETT, JJ., and most of the cases which so hold are there discussed. (18 N. Y. Crim. at page 286.) This sentimental view had been strongly advanced in the Saunders case (38 Mich. 218), but the Saunders case was repudiated by the U. S. Supreme Court in the leading "decoy letter" case. (Grimm v. U. S., 156 U. S. 604.) The Grimm case was followed by the Court of Appeals in the Krivitzky case (*supra*). The Krivitzky case, in turn, was followed in the Mills case (*supra*). In the Mills case, the New York conception of the doctrine was pithily stated by VANN, J.: "The courts do not look to see who held out the bait, but to see who took it." (178 N. Y. at p. 289; 18 N. Y. Crim. at p. 286.)

The sentimental argument was also effectually, although silently, answered by the Court of Appeals in the Conrad case (*supra*). The appellant's brief urged that the divine injunction "Lead us not into temptation" was an integral part of the law of New York, and forbade resort to traps. (See Appl'ts brief on file.) The affirmance, without opinion, was an answer to this pious contention. In an earlier case, one of the General Terms had expressly held that such a contention was insufficient,

and cited as a precedent the action of the great Law giver in overruling Adam's plea in Paradise " The serpent beguiled me and I did eat." (Bd. Excise v. Backus, 29 How. Pr. 33, 42.)

The New York cases make it clear that if the entrapped person does any voluntary act towards the consummation of the crime, he cannot claim the trap as a defense.

In the Mills case, the opinions had stated that Mills was guilty because he " proposed the scheme and set in motion the forces, &c." (18 N. Y. Crim. at p. 136.) In the Conrad case, Conrad sought to defend himself on the ground that the scheme was proposed *to and not by him*. It was held, however, that although he had been lured, yet he did the act " voluntarily, with full knowledge of the subject and of the consequences which would flow therefrom," and that the existence of the trap, therefore, constituted no defense.

In the light of these New York rulings, it follows that a trap can only operate as a defense, where it operates to prevent the proof of the consummated crime. If it results in a mere *physical interference* with the actor, as by interrupting him in the attempted consummation of his design, he would then be clearly guilty of an attempt. This is demonstrated by the Conrad and DuVeau cases (*supra*). Upon the contrary, however, the actor may, without interruption, do everything that he ever intended to do. If then, because of the existence of a trap, there is a failure to prove some essential ingredient of the consummated offense, the trap operates as a defense; and the actor cannot be convicted even of an attempt. This is the doctrine of the Jaffe case (*supra*); and, according to the view of the writer, it necessarily overrules the earlier Gardner. case (144 N. Y. 119; s. c. 9 N. Y. Crim. 404), which has held otherwise.

## II. As to Attempts.

It is not intended to discuss the New York law of attempts in general, but merely to point out the contributions made by the Conrad, DuVeau and Jaffe cases (*supra*). The Jaffe case, as the writer conceives, has overruled the earlier Gardner case (*supra*).

(1) *Impossibility as affecting the indictable character of an attempt.*— The text books are full of discussion as to whether a man could be indicted for an attempt if the act which he sought to do was impossible. If the impossibility is merely physical, as, for instance, an attempt to pick a pocket which is empty, or if the defendant meets with an unexpected physical interruption, as in the Conrad and DuVeau cases (*supra*), his unsuccessful act undoubtedly constitutes an indictable attempt.

This is the doctrine of the Moran case (123 N. Y. 254; s. c. 8 N. Y. Crim. 105); and nothing in the Jaffe opinion affects this doctrine.

Upon the other hand, if the condition is such that the defendant, even if uninterrupted, could not, by any possibility, commit the consummated crime because some essential element is lacking; in that event, he may not be convicted even of an attempt. This is the doctrine of the Jaffe case, which necessarily overrules the earlier Gardner case.

In the Gardner case, the defendant attempted to extort money from a Mrs. Amos. She was, however, acting in concert with the police, and was, on her part, attempting to trap the defendant. The money was paid; but the element of fear was wholly lacking. The Court of Appeals held that Gardner could properly be convicted of an attempt to extort. It is impossible to see how this conviction could be sustained in the light of the Jaffe opinion. It must be said of Gardner, as was said of Jaffe, " If all which an accused person intends to do would if done constitute no crime, it cannot be a crime to attempt to do with the same purpose a part of the thing intended." (People v. Jaffe, at foot of p. 290, *supra*.)

Prior to the decision of the Jaffe case, the Court of Appeals had repeatedly declared that the question whether a man was guilty of an attempt was " determinable *solely* by the condition of the actor's mind and his conduct in the attempted consummation of his design." This test was declared in the Moran case, and was repeated in the Gardner case (*supra*); was again repeated in the Sullivan case (173 N. Y. 122; s. c. 17 N. Y. Crim. 180); and was also repeated in the Conrad and DuVeau cases, in the Appellate Division opinion in the Jaffe case (*supra*). As far as the writer is aware, no case had held that this classical test was not applicable to every conceivable attempt. Yet, the Jaffe opinion, after referring to the Moran and Gardner cases, said that this test " although accurate in those cases, has no application to a case like this." (People v. Jaffe, at p. 291, *supra*.) The test, as a test, is destroyed, if there is a single case to which it has no application. It is difficult to see what sort of a test can now be devised which will enable one infallibly to determine whether a given act does or does not constitute an attempt. Certainly the question is no longer determinable " *solely* by the condition of the actor's mind and his conduct," &c., as we have hitherto been taught.

The writer, in his capacity as counsel, argued for the affirmance of the Jaffe conviction. He assumed, as he had to assume, that the Gardner case was the law of New York. He feels, now, however, free to concede that the Jaffe doctrine is sounder law. It accords with the views of Mr. BISHOP; and, in a general way, with the views of the text writers who have, for the most part, adopted BISHOP'S conception of the law of attempts.

When the matter is considered in the abstract, it would seem that both Gardner and Jaffe had really been convicted for entertaining mere crim-

inal intent, inasmuch as the overt acts of both were ineffectual for any purpose. It is a fundamental principle that "mere intent is not the subject of penal action and an overt act is essential to impart to the intent criminal responsibility." (People v. Sullivan, 173 N. Y. 122, 133; s. c. 17 N. Y. Crim. 180, 188, citing Wharton.)

The only matter of regret is that the Gardner opinion should not have been squarely overruled; but that it should be left as a false light to mislead the unwary.

(2) *Nature of the overt act.*—In New York, under § 34, Penal Code, the defendant, in order to be guilty of an attempt, must commit some act which "tends but fails" to effect the commission of the consummated crime.

Outside of New York, it had been held that mere acts of preparation could not be treated as attempts, and that, in order to constitute an attempt, the overt act must be the last proximate act and of such a character that, if not interrupted, it would have resulted in the consummated crime. (See People v. Murray, 14 Cal. 160; U. S. v. Stephens, 8 Sawy. 116.)

In the Sullivan case (173 N. Y. 122, s. c. 17 N. Y. Crim. 180), CULLEN, J., declared that this extreme doctrine had never been accepted in New York. In that case the defendants went from Albany to Cobleskill, armed and suitably equipped, with the design of breaking into the postoffice. They reached the building and were reconnoitering or inspecting it, when their design was frustrated by a police officer, whom they killed. It was held that their acts amounted to an attempt to commit a burglary. This Sullivan ruling was reiterated in the case of one of the co-defendants. (People v. O'Connor, 175 N. Y. 477.)

The Conrad opinion (*supra*) is chiefly of interest because of its application of the doctrine of the Sullivan case: The facts are too long to be repeated here; but it is enough to say that Conrad's hand was seized just as he was about to insert a speculum. It was not claimed that the insertion of the speculum would, of itself, have induced an abortion; but it was held that his several acts "were each in turn in ordinary course means to an end, and followed out to a final conclusion would consummate the intended crime."

Both CULLEN, J., in the Sullivan opinion, and HATCH, J., in the Conrad opinion, conceded that it might be difficult to determine whether a given act was or was not too remote to constitute an attempt. According to § 34, Penal Code, however, all that is required is that the act should "tend, but fail." Upon settled principles all questions of cause and effect are matters of fact to be decided by the jury. If it were doubtful whether a given overt act, because of its remoteness, "tended" or not, it would seem that that question, together with the other questions in the case, should be submitted to the jury under proper instructions for their guid-

ance. If they found the defendant guilty, their verdict would import a finding that the overt act " tended " to effect the commission of the crime.

(3) *Intent as affected by the existence of a trap.*—Under § 34, to commit an attempt, the defendant must have the intent to commit the consummated crime. In the Conrad case (*supra*), it was argued that where there was a trap, there never could be a conviction for an attempt. The argument was refined, and proceeded upon the theory that the defendant would be merely led along by the entrapping party, and would have no independent intent of his own; that the entrapping party would concededly have no intent to commit the consummated crime, and that, therefore, the intent required by § 34 would be lacking. (See appl'ts briefs on file.) The Court of Appeals affirmed without opinion, but necessarily overruled the contention. It is enough to say that in most of the New York trap cases, the conviction was for an attempt.