Thomas Diokehs, J.
This motion is being made for a dismissal of the indictment. It follows up the motion for an inspection of the Grand Jury minutes, the inspection having been granted by me, recently.
Two counts are embodied in the libel of accusation. In one count the charge and specifications cover the crime of feloniously receiving stolen property, and in the other, the crime of feloniously withholding and concealing stolen property and aiding in the withholding and concealing of stolen property.
A companion motion made in behalf of three other defendants, each of whom is cast in the role of partieeps criminis with this defendant but by a separate indictment,. is before me, too, for judicial attention. The adjudication of this motion will serve also as the adjudication of that group motion.
Termed “ deficiencies ” by defendant, the specific grounds depended on for an affirmative ruling are:
1. No proof of a stealing;
2. No proof of a criminal receiving of stolen property within this county; and
3. No proof of a recent and exclusive possession of the allegedly stolen property.
The material evidence composed in sequential summary, reads like this: The arrest of the three other defendants on November 30, 1960, by suspicious detectives at a short distance from the place where those other defendants had loaded three cartons of the allegedly stolen merchandise in the trunk of an automobile ; the denial by those other defendants of the ownership of the merchandise.; the denial by this defendant that he knew anything about the merchandise when interrogated by the detectives a short time later upon their finding several cartons of the merchandise in the apartment occupied by this defendant; this defendant’s statement to the detectives in Felony Court that the merchandise was “legitimate”; the identification of the merchandise made on December 2 (no year mentioned; obviously made after the arrest) by the general production manager of the Long Island branch warehouse as that coming either from this warehouse or from the one situated on the “ West Coast ”, both warehouses, and the merchandise therein, belonging, besides others abroad, to the complaining firm by which he was *363 employed; and, what bears vitally on the outcome of this motion, a “ shortage ” of merchandise uncovered in the Long Island warehouse by several inventories, each inventory taken at an intervening period of six months, the first inventory in December, 1959, the second, in May, 1960, and the third, in November, 1960.
Other than the general production manager’s testimony relating to each “ shortage ” disclosed by the periodical inventories taken of the merchandise stored during the period of 18 months preceding November 30,1960, the day when the arrest was made, there is nothing else in the evidence to throw any light on how it came about that the merchandise had been missing and under what circumstances. His testimony on this head consists entirely of what amounts to relating about a “ shortage ” of merchandise. Not once in any way, however, did he state that the missing merchandise had been stolen. It should be borne in mind, then, that only after the taking of the inventories in the ‘ ‘ regular course of business ”, was the discovery made that there were “ shortage [s] and that without anything else indicating or supplying the cause.
The book eases have set the elements that go to make up the legal formula as the standard for judging and determining a charge of criminally receiving property or of feloniously concealing or withholding such property, for the purpose of convicting an intaker, that is, a receiver of stolen goods, in accordance with the terms contained in section 1308 of the Penal Law.
The concurring court in People v. Hartwell (166 N. Y. 361) had this to say about the provision of the Penal Law (then § 550, now § 1308) dealing with receiving stolen property: “ It will be observed that the provision defines one crime, but committed by different means: First. By the feloniously buying or receiving stolen property knowing it to have been stolen; and, second, by the feloniously concealing, withholding or aiding in the concealing or withholding of such property knowing it to have been stolen ” (p. 364). Then the court immediately continue by setting out the following formula: 66 Under the first provision the crime consists of three elements: 1. The property must be stolen. 2. It must be received by , the accused with the knowledge that it was stolen at the time of the receiving. 3. It must be received .by him with the felonious intent of depriving the true owner of the property.” (See, also, People v. Jaffe, 185 N. Y. 497, 501.)
The burden of proof of the three elemental facts, if the crime charged is to have any legal force, rests upon the shoulders of the prosecutor to establish by legal evidence. (People v. Walker, 198 N. Y., 329, 334; People v. Jackerson, 247 N, Y. 36, motion for *364 reargument denied 248 N. Y. 503; People v. Hopkins, 205 Misc. 666; People v. Brown, 92 Misc. 622.) And such proof must be established beyond a reasonable doubt. (People v. Taylor, 2 A D 2d 977.) A presumption of the existence of the essential elements as substitution for actual proof to bolster the People’s case, is not recognized in law. (People v. Goodheim, 188 App. Div. 148, 151.) In other words, there is no presumption that a defendant had violated a penal statute. (City of Buffalo v. Smith, 8 Misc. 348.) The People are bound to establish a clear case. (People v. Bennett, 49 N. Y. 137, 143.) And for a clear case, “In criminal cases, the proofs ought to be clearer than light.” (Ballentine’s Law Dictionary [2d ed.], p. 628.)
That the merchandise was purloined by someone is an essential element of the crime (People v. Acerno, 184 App. Div. 541; People v. Riggi, 152 Misc. 444; People v. Walker, 198 N. Y. 329, supra; People v. Matthews, 6 A D 2d 786; People v. Corsetti, 10 A D 2d 685), for the larceny, although not strictly an element of the crime of receiving, nevertheless, is “ a prerequisite which must be connected with the receiver by scienter, or by good ground to believe that the property had been stolen.” (People v. Zimmer, 174 App. Div. 470, 471, affd. 220 N. Y. 597.)
Up to this point, I can see no proof of the commission of a larceny and of knowledge thereof when judged solely on the basis of the testimony of the “ shortage [s] ” as the result of the revealing inventories. To strain a point, the best commentary that I would undertake to make regarding the evidence in toto, is the extravagant suggestion that it might be said to smack of suspicion, if anything at all. But suspicion does not make out a prima facie case. (People v. Norris, 28 Misc 2d 705.) Difficulty in producing circumstantial evidence of guilty knowledge, let alone direct evidence, furnishes no justification for substituting suspicion and conjecture for requisite proof. (People v. Lewis, 246 App. Div. 93.) In a criminal case, a court cannot guess or surmise at what might or must have been. (People v. Sacks, 276 N. Y. 321.)
Now, this question (its answer being decisive of the issues) looms: Does the fact, by itself, that merchandise of the kind missing, found in the possession of this defendant, but not specifically traced by appropriate evidence to the merchandise of the inventories, tend to provide, in the absence of direct proof, circumstantial evidence of a prima facie quality that could enable me to say a larceny within the knowledge of defendant had been in reality committed, so that in fact it could be held that there exists in this case the necessary “ prerequisite * e * [connecting defendant] by scienter,” or “by good *365 ground to believe that the property had been stolen ”? (People v. Zimmer, supra, p. 471.) Pertinent law provides the illuminating answer.
Mere possession of another’s property proves nothing until it is shown how it was taken. (Knickerbocker v. People, 43 N. Y. 177, 181.) Also, besides such possession, there must be something which may be deemed a receiving of the property. (People v. Acerno, 184 App. Div. 541, supra.)
The bald fact that stolen property is found in the possession of a person is not sufficient to authorize his conviction for receiving stolen property, unless his criminal intent in receiving it with knowledge that it was stolen, is shown. (People v. Weisenberger, 73 App. Div. 428.) A person may receive property from another and at the time of the receiving of it may intend to retain it and thus feloniously deprive the owner thereof and still have no knowledge that the property had been stolen. It is not per se criminal to receive stolen property, but it is a crime to receive it knowing it to have been stolen. (People v. Marino, 271 N. Y. 317, 320; People v. Hartwell, 166 N. Y. 361, 366, supra.) The knowing that the property had been stolen is one of the essential and main elements constituting the crime, for without this knowledge no crime is charged. (People v. Hartwell, supra, p. 366.) And knowledge must be established by evidence which should demonstrate that when a defendant received the stolen property (here Nov. 30, 1960), he received it with knowledge then that it had been stolen (People v. Grushhin, 161 Misc. 38, 42) and not with a knowledge of receiving at a time subsequent to the day as specified. (People v. Hartwell, supra, p. 367; People v. Gold, 239 App. Div. 368, 371.)
What has been said leads me to this inescapable observation: That there is a serious chasm in the proof with respect to the production before the Grand Jury of direct or circumstantial evidence of a quantum required as at a trial to make out a prima facie case (People v. Fleckenstein, 27 Misc 2d 728), and that that chasm is fatal. Such void in the People’s case leaves untied defendant’s possession of the property with guilty knowledge that it had been stolen.
It is clear to me, therefore, beyond peradventure, that the People have failed to conform their proof to the requirements of the foregoing principles of the case law, causing, as a result, the indictment to remain unsubstantiated. In other words, “ it is a mere truism that there can be no receiving of stolen goods which have not been stolen.” (People v. Jaffe. 185 N. Y. 497, 500, supra.) Even a liberal or an optimal consideration of the evidence could succeed in evoking only one remark, and that is *366 felicitous in the situation here: “ ‘ Where different inferences may be drawn from the same state of circumstances, it is the duty of the court to presume in favor of innocence rather than of intentional and guilty- misconduct. ” ’. (People v. Kelly, 11 Ápp. Div. 495, 500, appeal dismissed 153 N. Y. 651.)
The disposal of the first of the so-called “ deficiencies,” makes concern over the remaining two academic, and so, needless to pass upon.
The length and breadth of the evidence before the Grand Jury reconciles itself with the presumption of innocence; consequently, defendant is entitled to absolution, and by reason thereof, to a dismissal of the indictment. “ A defendant is exonerated by the failure of the prosecution to prove its case.” (Ballentine’s Law Dictionary [2d ed.], p. 28.)
The motion for a dismissal of the indictment is. granted. Indictment dismissed and defendant is directed to be discharged.